## PEACE v. PEACE et al.

No. 20483. Opinion Filed May 26, 1931.

J. C. Cornett, for plaintiff in error.

Leahy, MacDonald, Maxey & Files, for defendants in error.

ANDREWS, J. This cause is here on appeal from the judgment of the district court of Osage county, admitting to probate the last will and testament of Paul Peace, an adult restricted Osage Indian. The trial in the district court was de novo on appeal from the county court. For convenience the

parties will be referred to as proponents, contestant, and testator.

The contestant, who was the wife of the testator, presents nine assignments of error under four contentions, which we will consider separately.

The first and principal contention is that the testator did not have testamentary capacity to execute the will.

The record shows that the testator was about 50 years of age at the time of his death; that the will admitted to probate was executed on December 16, 1926; that at the time of his death he was, and for a long time prior thereto he had been, a resident of Fairfax, Osage county; that he married Clara Nash, an Osage Indian, and three children were born to them; that one of those children died; that the other two, Joseph Peace and David Peace, minors, survived him; that they are the proponents of the will; that in 1915, his wife obtained a divorce from him and a settlement of property rights was made; that he conveyed his inherited one-half interest in his deceased child's land to his two children, Joseph Peace and David Peace; that he was addicted to the use of intoxicating liquors and to the use of peyote, a narcotic; that in 1919, the county court of Osage county appointed a guardian for him after determining him to be an incompetent, and that in 1920, while under guardianship, he married Thersa Peace, the contestant herein.

If testator's mental condition, evidenced by a finding of the court of incompetency and the appointment of a guardian, was such as to show him lacking in testamentary capacity on December 16, 1926, it must show want of testamentary capacity in October, 1924, when the former will was executed, and want of capacity to marry in 1920, at the time he married the contestant.

The testator remained under guardianship until February, 1926, when, upon a petition of himself and the contestant, the county court of Osage county made an order of restoration after finding that he was sane and that his habit of becoming intoxicated had ceased.

In 1922 the contestant filed a petition for divorce, charging the testator with abandonment and with extreme cruelty. That proceeding was abandoned and the testator returned to their home. In September, 1923, the testator filed a petition for divorce, charging cruelty in threatening to shoot him and threatening to poison him. That action was abandoned and the testator again returned home. During their married life the testator and contestant repeatedly had domestic trouble.

On December 16, 1926, the day the will was prepared and executed, testator went to the home of Magella Whitehorn in Hominy, Okla., and requested her to take him to Pawhuska and to help him attend to some business. Magella Whitehorn, the driver, the testator, and his mother left Hominy about 9 o'clock in the morning and drove to Pawhuska, where they stopped near the Indian Agency. Testator got out of the car and went to the Indian Agency, but soon returned and directed them to drive to Robert Stuart's office. He went to Stuart's office, but did not find Stuart. They then drove to the courthouse, where testator and Magella Whitehorn got out of the car and went into the courthouse. He did not find Stuart, but saw A. W. Comstock. He told Comstock he wanted him to prepare him a will. Comstock directed them to his office. They went there and Comstock soon joined them. Testator told Comstock that testator's wife had had him make a will before, but that that will was not right and he wanted to make a will and not to leave her anything; that he wanted to give it all to the boys, and gave him the names of the boys. Comstock explained to testator that it would be necessary to give his wife one-third in order to make the will legal. Testator then agreed to give his wife one-third. Testator spoke the Osage and English language and, under testator's instructions, the will was drawn and read over to testator, who said it was as he wanted it. It was signed by him and at his request it was witnessed by Magella Whitehorn and Paul Comstock. Paul Comstock drew the will.

Testamentary capacity of a testator must be determined as of the time of the making and execution of the will. In re Estate of Wah-Kon-Tah-He-Um-Pah, 108 Okla. 1, 232 Pac. 46. That question, as well as the questions of duress, menace, fraud, and undue influence, are questions of fact and not of law. In re Estate of Wah-Kon-Tah-He-Um-Pah, supra; In re Estate of Hart, 106 Okla. 180, 233 Pac. 227. If the testator understood the nature and consequences of his acts and was free from duress, menace, fraud, and undue influence at the time of the making of the will, he had testamentary capacity. In re Estate of Hart, supra. In determining that question, prior and subsequent acts have bearing only to the extent of helping to determine mental status at the time of the execution of the will. In re Estate of Wah-

Kon-Tah-He-Um-Pah, supra; In re Wah-Kon-Tah-He-Um-Pah's Estate, 109 Okla. 126, 234 Pac. 210; Bilby v. Stewart, 55 Okla. 767, 153 Pac. 1173; and Dickey v. Dickey, 66 Okla. 269, 168 Pac. 1018. Undue influence such as will invalidate a will must be something which destroys the free agency of the testator at the time the instrument is made and which, in effect, substitutes the will of another for that of the testator. It is not sufficient that the testator was influenced in the ordinary affairs of life or that he was surrounded by relatives and friends in confidential relationship with him at the time of its execution. In re Estate of Hart, supra; In re Chopper's Estate, 112 Okla. 25, 239 Pac. 592; in re Will of Swartz, 79 Okla. 191, 192 Pac. 203; and Kindt v. Parmenter, 83 Okla. 116, 200 Pac. 706. In determining the mental status of the testator, presumption of sanity must be indulged and, where a will appears to be a rational act performed in a rational manner, such presumption and such apparently rational act amounts to evidence of testamentary capacity. The fact that a testator has been adjudged incompetent to manage his property and business affairs and that a guardian has theretofore been appointed are no more than evidences of incompetency which may be overcome by other evidence that testator was mentally competent at the time of the execution of the will. In re Estate of Wah-Kon-Tah-He-Um-Pah, supra.

The proceedings to admit the will to probate were equitable in their nature, and this court will weigh the evidence and will not reverse the judgment of the trial court unless the judgment is clearly against the weight of the evidence. Youngblood v. Rector, 126 Okla. 210, 259 Pac. 579.

In this case the finding of the trial court as to his testamentary capacity and want of undue influence is not against the clear weight of the evidence. While there is some evidence tending to show want of testamentary capacity at various times, the clear weight of the evidence is that on the date of the execution of the will in question there was no want of testamentary capacity as defined by this court. This record shows that the testator was fully capable of understanding the nature and effects of his acts on that date and that at the time of the preparation and execution of the will he wanted to give to his wife no larger portion of his estate than he was required under the law to give to her. The will gives her one-third and gives one-third to each of his two children.

The fact that the testator was an aged person in no way operates against the validity of the will, but every presumption tends to uphold its validity. McClure v. Kerchner, 107 Okla. 28, 229 Pac. 589.

It is contended by contestant that, owing to testator's affections for her and want of interest in his children, testator desired to give her his entire estate, as was shown by a former will of the testator. The record shows that testator was a full-blood Indian and that contestant is a white woman. It shows that their married life had been unhappy and that, by reason of the dissipation of testator, his income was turned over to contestant and was under her complete control and domination. It is further shown by the record that his two children were full-bloods and unenrolled. Testator was not living at his home at the time of the execution of the will. Under those circumstances we cannot say that testator would not conclude that his former will, which he had said contestant had induced him to make, giving contestant all of his property except $500 to each of his children, was wrong and that he would not desire to change it. The evidence is sufficient to show that he had both mind and determination to change it.

The testimony of the subscribing witness is emphatic that, at the time the will was executed, testator was mentally capable of understanding and knowing the consequences of his acts, and that there was nothing in the acts or appearance of testator at that time that would lead them to believe that testator was under the influence of intoxicating liquor or narcotics. The record shows that after the execution of the will, the testator told a witness that he had had a will drawn up and that he had willed one-third of his estate to his wife and one-third to each of his two children.

The second ground for contesting the will is undue influence, contestant contending that, "at the time of making said will, he was under undue influence, menace, fraud, and duress." The lower court found on that subject as follows:

"The court further finds that no undue influence or fraud or duress was used on Paul Peace for the purpose of procuring the will of December 16, 1926."

It is shown by the evidence that testator went to Pawhuska on his own suggestion and volition the day the will was drawn, and that he did not tell his business to the driver or to Magella Whitehorn, who went with him, until sometime after reaching Pawhuska. His mother had advised him to

secure a divorce from the contestant and the trial court found from the evidence that his mother was responsible for the proposed divorce proceedings. The mother was not present when the will was drawn, but was present when the same was signed and witnessed. There is no evidence that she made any suggestion or in any way tried to use her influence in the making of the will.

In Ginter v. Ginter (Kan.) 101 Pac. 634, the court held:

"Suspicion, conjecture, possibility, or guess that undue influence or fraud has induced a will is not sufficient to support a verdict to that effect.

"Power, motive, and opportunity to exercise undue influence do not alone authorize the inference that such influence has in fact been exercised."

The clear weight of the evidence is to the effect that if testator was influenced, it was by the conduct of the contestant.

The third contention presented by contestant is that the bias and prejudice of the trial court prevented her from having a fair and impartial trial. The trial court in its findings used the following words:

"The court further finds that the contestant, Thersa Peace, is a white woman and that Paul Peace was a full-blood member of the Osage Tribe of Indians."

Contestant claims that such a finding was unwarranted by the court because it does not prove or disprove any issue in the case. There is no merit in that contention. The evidence supports the finding. We do not think that the mentioning of those facts in the court's finding shows that the court was in any way influenced by them.

The last contention of contestant is that of misconduct of counsel. It is contended that Walter Gray, one of the attorneys for proponents, in his argument to the court, stated that testator at the time of the making of the will dated October 28, 1924, was under the influence of contestant. It is also contended that C. S. MacDonald, during the course of his argument, read a portion of a petition for divorce filed by Paul Peace after the same had been excluded by the trial court and objections interposed by contestant. It is further contended by contestant that during the argument reference was made to the witness, Dr. Reed, who was a witness for contestant at the hearing in the county court, and that there was an insinuation that said witness was not present in the trial court because of the fact that his testimony was unfavorable to the contestant.

Those contentions are not well taken. The matter was tried to the court and not to a jury, and the court was fully qualified to disregard irrelevant testimony and unfair argument of counsel. We cannot conclude that the trial judge considered improper statements or argument or that he was influenced by any improper conduct.

Finding no error in the proceedings, the judgment of the trial court is affirmed.

CLARK, V. C. J., and RILEY, HEFNER, CULLISON, and KORNEGAY, JJ., concur. LESTER, C. J., and SWINDALL and McNEILL, JJ., absent.