This proceeding originated in the county court of Pawnee county, where an order was made admitting the will, together with codicil, of Gordon W. Lillie to probate and appointing Frank Lyon executor. Albert Lillie, a brother of decedent, appealed to the district court. There the cause was tried de novo, resulting in findings of fact and conclusions of law and a judgment and decree establishing the will and codicil, dismissing the contest, and affirming the order of the county court. Contestant appeals.
Gordon W. Lillie died February 3, 1942, at the age of 82 years, a widower without issue, leaving surviving him as heirs at law, Albert Lillie, Lena Green, and Effie Judy, brother and sisters. The estate was valued at $200,000. Gordon W. Lillie, under the name of "Pawnee Bill," had gained a national reputation as a plainsman and showman.
On May 27, 1940, deceased executed a will in due form, devising and bequeathing his property as follows:
To Joe Barrera, known as "Mexican Joe," $1,000.00;
To Nellie Ruffner "faithful employee," $800.00 and an automobile;
To Mary Barrera "faithful employee" $500.00 and a horse named Billy;
To Lucy Davis, cousin, $500.00;
To Ella Bronde, sister-in-law, $500.00
To Albert Lillie, brother, $1,000.00.
Improved and described real estate known as Blue Hawk Peak, the home of testator, was devised and personal property, consisting of livestock, including a herd of buffalo, farm machinery, and household furnishings, were bequeathed to the Boy Scouts of America on condition of acceptance and maintenance, otherwise the said real estate and personal property to become general assets of the estate, the residue of which was devised and bequeathed to "beloved sisters," Mrs. Lena Green and Mrs. Effie Judy, share and share *Page 599 
alike. By the will, Glenn Lyon was appointed sole executor. The codicil, dated February 21, 1941, appointed Frank Lyon vice-executor.
An attorney for contestant, who had been consulted by testator regarding the devise and bequest to the Boy Scouts of America, made inquiry whether such devise and bequest would be acceptable. The attorney received a letter from New York, dated May 25, 1940, of nonacceptance. The letter of nonacceptance and information relative thereto were transmitted to testator.
It is the contention of appellant that at the time of execution of the will and codicil, the testator lacked testamentary capacity, and that fraud and undue influence such as to vitiate the will were practiced by beneficiaries named in the will, Nellie Ruffner and Mary Barrera, who occupied positions of trust and confidence with testator. It was alleged that fraud practiced by the named beneficiaries extended to a conspiracy in which Glenn Lyon, executor named in the will, participated.
Under such circumstances, this court will examine the entire record and weigh the evidence. In re Creger's Estate,135 Okla. 77, 274 P. 30; Wood v. Wood, 168 Okla. 198, 32 P.2d 715; McDonald v. Cooke, 186 Okla. 347, 97 P.2d 883. The appellant recognizes that the burden is upon the contestant to prove lack of testamentary capacity, fraud and undue influence, but urges that the general principle of law is subject to a well-recognized exception stated in Myers v. Myers,130 Okla. 184, 266 P. 452. The exception relied upon is that where persons, occupying a confidential relation to testator, assist in preparation of the will, are beneficiaries named in the will, and receive benefits to which they would not be entitled under the law, the presumption of undue influence arises which calls for a careful scrutiny by the court, and the burden is upon proponents to show the absence of undue influence. In Myers v. Myers, supra, the statement of exception to the general rule was mentioned and said to be quite generally established; the exception stated was not applied in that case but the decisive rule of law justifying reversal and probate of the will was that undue influence such as will invalidate a will is that which, in effect, substitutes the will of others or another for the will of testator, and that the presence of beneficiaries and the fact of their confidential relation with testator at the time of execution of the will constitutes a mere general influence which, if not shown to bear upon the testamentary act, is not undue influence such as to defeat a will. In re Cook's Estate, 71 Okla. 94, 175 P. 507, and In re Chopper's Estate, 112 Okla. 25, 239 P. 592, state the general rule.
The evidence discloses that the testator had been a resident of Pawnee for more than 50 years. Prior to 1913, he was actively engaged in the show business. In 1936 testator and his wife were injured in an automobile accident, as a result of which his wife, Mary Lillie, died and testator suffered a traumatic psychosis from which he showed a considerable degree of recovery but retained some disability attributable to age and the accident. Mary Barrera and Nellie Ruffner, beneficiaries under the will, and Glenn Lyon, named executor, were present at Cleveland, Okla., when the will was executed. Mary Barrera, from 1939, acted as testator's secretary and bookkeeper. She had authority to write checks and collect accounts. She is shown to have made notes of testator's will in May, 1940. She and Nellie Ruffner were present at the reading of drafts of the will. Nellie Ruffner served testator from 1937 as chauffeur and maid.
For the purposes of our decision, we consider that these beneficiaries occupied confidential relations with testator. Likewise, as a matter of law, we consider that "Inferences of undue influence which arise from the fact that testator and beneficiaries are in relations of trust and confidence, are inferences *Page 600 
of fact; and may be rebutted by any competent evidence." Page on Wills, vol. 2, p. 612.
It is not every act that constitutes undue influence, but if a beneficiary writes or prepares a will, that fact should inhibit pronouncement of the instrument as testator's will until the court is satisfied from evidence that testator instructed the preparation of the will and knew its contents at the time of its execution. Welch v. Barnett, 34 Okla. 166,125 P. 472, quoting Lyons v. Campbell, 88 Ala. 462. The annotation in 66 A.L.R. 228 states:
"It is the generally accepted view that the mere existence of a confidential relation between testator and a beneficiary under his will does not raise a presumption that the beneficiary has exercised undue influence over the testator, and does not cast upon the beneficiary the burden of proving undue influence. These consequences follow only when the beneficiary has been actively concerned in some way with the preparation or execution of the will." 28 R.C.L. 146, § 100; McClure v. Kerchner, 107 Okla. 28, 229 P. 589; In re Hart's Estate, 106 Okla. 180, 233 P. 227; Kindt v. Parmenter,83 Okla. 116, 200 P. 706; In re Swartz's Will, 79 Okla. 191, 192 P. 203, 16 A.L.R. 450; In re Cook's Estate, 71 Okla. 94, 175 P. 507.
As stated in Re Estate of Llewellyn, 296 Pa. 74,145 A. 810, 66 A.L.R. 222: "The active part which gives rise to the presumption must go to the substance of the testamentary act, not to some mere formal matter. In the absence of such procurement, no burden of proof rests on the legatee." No presumption of undue influence is raised when the activity of the beneficiary in the preparation, drafting, or execution of the will was done at the request of testator. 68 C.J. 760, note 75(a) and (b).
The situation as disclosed by the evidence in the case at bar is comparable to that in the case of Councill v. Mayhew,172 Ala. 295, 55 So. 314, where it was said the beneficiary's secretary's activities are rather in the nature of testator's amanuensis.
"It was her duty in that capacity to write for him whatever he dictated; and in thus merely responding to his commands, it cannot be plausibly urged that she was active in procuring the execution of the will."
And, as in that case, no one of the beneficiaries was "the principal nor even an important or considerable beneficiary under the will." Therein, a legacy of $500 out of an estate of $8,000 or $10,000 was said not to be an undue or unusual amount to bestow upon a private secretary who had served long and faithfully. Much more then is a comparable amount less to be considered undue influence where the estate is approximately 20 times the value. Canfield v. Canfield, 167 Okla. 590,31 P.2d 152. That the will of testator was not procured to be made by these beneficiaries is established by the admissions of contestant that in April, 1940, the testator expressed to him the desire to make a will.
There are other acts and conduct relied upon as to activity of Mary Barrera and Nellie Ruffner. These are urged as showing a hostility toward Albert Lillie and as having a tendency to alienate the affections of testator from his brother, the contestant. In consideration of this evidence, we are of the opinion that the trial court was justified in the view that such activity was not sufficient to defeat the testamentary act, particularly in view of the evidence as to the manner of executing the will.
The contestant relies upon a rule of law stated in Schouler on Wills, vol. I, Sec. 297, p. 364, that fraud together with an unequal distribution of decedent's estate may be considered as a circumstance in determining undue influence. The record evidence fails to disclose fraud, but the provisions of the will, however unequal, do not establish the existence of undue influence. In *Page 601 
re Sporn's Estate, Sporn v. Herndon, 190 Okla. 149,121 P.2d 602. Nor does the will itself in the light of evidence of record disclose an unjust or unnatural disposition of the residue of the estate, and especially is that fact true when by contestant's testimony it is established that he and the testator were not on friendly terms at the time the will was executed. The burden of proof rests upon proponents of the will to make prima facie showing entitling the will to probate. The burden then shifts to the contestant to establish the issues presented by his contest. In re Elrod's Estate, 154 Okla. 84,6 P.2d 676. Power, motive, and opportunity, we held in Peace v. Peace, 149 Okla. 123, 299 P. 451, do not alone authorize an inference that such influence has in fact been exercised. There was an abundance of evidence adduced which, if believed, established the testamentary capacity of testator. From an examination of the record as a whole, we are of the opinion that the order and judgment of the trial court is not against the clear weight of the evidence.
Affirmed.
GIBSON, C.J., and OSBORN, BAYLESS, WELCH, and DAVISON, JJ., concur.