TOOMBS et al. v. MATTHESEN.

No. 34574.    March 4, 1952.

*241 P. 2d 937.*

David W. Taylor, Norman, and Creekmore Wallace and C. Lewis Dollarhide, Oklahoma City for plaintiffs in error.

Joe A. Smalley and Ben Huey, Norman, for defendant in error.

DAVISON, J.   This is an appeal from a judgment of the district court of Cleveland county sustaining the judgment of the county court admitting the will of Ewald Matthesen, deceased, to probate.   Roberta Toombs, Katherine M. Dyer, Sam Zellar, Jr., and Bernard Matthesen, Jr., contestants, will be referred to as plaintiffs and George Matthesen, executor of the estate of Ewald Matthesen, deceased, will be referred to as defendant, in accordance with the provisions of 58 O. S. 1941 §41.

Ewald Matthesen died on the 23rd day of December, 1948, at about the age of 83, leaving as heirs at law, Birdie May Matthesen, his wife by a second marriage, the defendant, and four grandchildren, the plaintiffs above referred to.   Three of the plaintiffs were the children of a deceased daughter of the testator, and the fourth plaintiff, Bernard Matthesen, Jr., was the child of a deceased son of the testator. Under the terms of the will, which is here under consideration, the entire estate of the testator, which amounted to more than $28,500, would be divided

between the testator's widow and defendant, his only surviving child, to the exclusion of the plaintiffs. The widow would take a portion equal to the portion she would take under the laws of succession, i. e., one-fourth, and the defendant would take the balance.

In October, 1947, the testator suffered a stroke, after which it was necessary for him to be attended by nurses. In January thereafter, the defendant started looking after his father's business. During that time, the defendant wrote, or caused to be written, a letter to the Treasury Department of the United States wherein it was stated that certain bonds issued in the name of Ewald Matthesen were lost and requested the issuance of duplicate bonds in the names of Ewald Matthesen and George Matthesen. In reality these bonds were in a safety deposit box rented by Mrs. Matthesen. Upon learning of this letter, the plaintiffs filed a petition in the county court of Cleveland county, asking that a guardian be appointed for the testator. George Matthesen appeared therein opposing the appointment of a guardian. On April 20, 1948, letters of guardianship were issued and George Matthesen was appointed guardian.

After the appointment of guardian, the testator asked the defendant if he could make a new will, whereupon the defendant took the testator to see Mr. Ben Huey, an attorney in Norman, Oklahoma. Several days later, on May 3, 1948, the testator and the defendant returned to Norman and were taken by the attorney to the office of Dr. W. T. Mayfield, a medical doctor, and the testator was there examined by Dr. Mayfield and Dr. J. A. Reiger, assistant superintendent of Central State Hospital at Norman, Oklahoma. This examination was made in the private office of Dr. Mayfield with only the two doctors and the testator present. After the examination was completed, the will was signed by the testator and the attorney and two doctors, as witnesses.

The plaintiffs rely upon eight assignments of error, presented by their brief under the following propositions:

"Testamentary capacity of the deceased is a question of fact, and the presence or absence of such testamentary capacity should be determined by the acts, conduct and declarations of the deceased both before and after the making of a will.

"The activities of the executor in connection with the making of the will, and the benefits to him under the will, together with his confidential relationship with the testator raises a presumption of undue influence and coercion; and this presumption coupled with circumstances shown in the case establishes that this is in effect the will of the executor rather than that of the testator.

"The activities of the executor, prior to the execution of the will, raises a presumption of undue influence and when the presumption is raised the burden of proof shifts from the contestants to the proponent."

It is an established rule of law that a will contest is a case of equitable cognizance, and that, on appeal, this court will examine the whole record and weigh the evidence; but the findings and judgment of the district court will not be disturbed, unless such findings and judgment are against the clear weight of the evidence. In re Anderson's Estate, 142 Okla. 197, 286 P. 17.

The district court found that the testator "was possessed of testamentary capacity," and concluded as a matter of law that he "did possess testamentary capacity on May 3, 1948."

The record of the guardianship of Ewald Matthesen was introduced into evidence, wherein it was shown that the court found Ewald Matthesen to be an incompetent person and a guardian was appointed; and that the testator was not restored to competency prior to his death. In the case of In re Wheeling's Estate, 198 Okla. 81, 175 P. 2d. 317, this court held:

"An adjudication of a testator's mental incompetency to manage his property is to be considered in the determination of his testamentary capacity, but such evidence is not conclusive proof thereof."

There was also testimony to the effect that after the testator suffered the first stroke in October, 1947, he would tear his clothing, and on one occasion he disrobed in the presence of women; that he would put on and remove his shoes continually; that he cut a mole from his nose and knives had to be kept from him; that he would stand in the yard and call for neighbors so loud that he could be heard four blocks away; that he would remember signing something, but would not remember what is was that he signed; that he called one of the plaintiffs by the name of her deceased mother and could not understand that she was his granddaughter, but later cried because he did not know her; and of other unnatural acts. Several of the witnesses for the plaintiffs testified that the testator "had good days and bad days" and that he was rational at times and at other times irrational. Testator's widow, a witness for plaintiffs, testified that he knew her and his grandchildren. Dr. Mayfield, who signed the will as a witness, testified that he and Dr. Rieger examined the testator with regard to his mental capacity just prior to the execution of the will; that as a result of his examination it was his opinion that the testator had sufficient mental capacity to understand what he was doing; that he knew the provisions of the will; that he knew what he wanted to do and that the provisions of the will coincided with the wishes of the testator. Dr. Rieger, testified that it was his opinion that the testator was competent to make a will, that his orientation was good, that he knew what he was doing, and that he gave the reason why he wanted it done that way.

In the case of In re Mason's Estate, 185 Okla. 278, 91 P. 2d 657, it was said:

"This court has frequently held that a testator has a sound mind for testamentary purposes when he can understand and carry in mind, in a general way, the nature and situation of his property, and his relation to the persons around him, to those who naturally have some claim to his remembrance, and to those in whom and things in which he has been chiefly interested, and that he must understand the act which he is doing and the relation in which he stands to the objects of his bounty and to those who ought to be in his mind on the occasion of making his will. . . .

"The question of mental capacity to make a will is a question of fact, and is to be determined from the condition of the testator's mind at the time of the making of the will; and in determining the mental status of the testator the presumption of sanity will be indulged; and where a will appears to be a rational act performed in a rational manner, such presumption and such apparently rational act amounts to evidence of testamentary capacity; and in determining the mental status of a testator in a will contest, the question to determine is, 'Did the testator possess testamentary capacity at the time of the making of the will?' Prior and subsequent acts have bearing only to the extent of helping to determine the mental status at the time of the execution of the will."

The district court also found "That said will was executed of his own free will and accord and without undue influence, duress, or coercion," and concluded "that there was no undue influence, duress or coercion, exercised upon the said Ewald Matthesen, deceased, at the time of the execution of said will above referred to."

The facts, in addition to those stated above, relied upon by the plaintiffs to show that the will was the result of undue influence exercised by the defendant, are as follows: That in December, 1947, the testator executed a will wherein it was provided that his widow, the defendant and two of the plaintiffs, Roberta Toombs and Katherine M. Dyer, would share his estate; that soon afterwards, the defendant

started looking after the business of the testator and regularly took the testator for rides in his pick-up truck; that no one was permitted to accompany them upon these rides; that the defendant took the testator to the attorney for the purpose of making and executing the new will and was present when the will was executed; that the defendant did not tell the other heirs about the execution of the will.

The defendant testified that the testator expressed his displeasure of the actions of his granddaughters in filing the guardianship proceedings, and that he at no time attempted to influence the testator in any manner in making another will.

Dr. Rieger testified that the testator signed the will in the presence of himself, Dr. Mayfield and Mr. Huey and that he signed the same in the presence of Dr. Mayfield and Mr. Huey; that it was determined at the time that it was the last will and testament of the testator and that he was making it of his own free will and accord; and, that he saw no undue influence. On cross-examination he testified that the testator expressed his appreciation of his son's interest and care in him and that the other heirs, daughters and granddaughters had been away a good bit of the time and that the testator felt he should reward his son more because of his close contact with him and help.

Mr. Huey testified that the defendant never used any influence of any kind upon the testator in his presence to induce him to sign a will; that the testator told him what he wanted the terms of the will to provide; that the contents of the will are exactly as the testator wanted it; and that the testator was displeased with the actions of his granddaughters in having the guardianship established.

It has been stated in numerous cases that undue influence, such as will invalidate a will, must be something which destroys the free agency of the testator, at the time when the instrument is made, and which, in effect, substitutes the will of another for that of the testator. Mere suspicion that undue influence was brought to bear is not sufficient to justify the setting aside of the will. Lincoln v. Lincoln, 185 Okla. 464, 94 P. 2d 227.

In the case of In re Lillie's Estate, 195 Okla. 597, 159 P. 2d 542, it was held:

"The presence of beneficiaries and the existence of their confidential relation with the testator at the time of the execution of a will is a circumstance which, if not shown to bear upon the testamentary act, is not undue influence such as defeats a will."

In that case this court also discusses and answers the next proposition urged by the plaintiffs.

The plaintiffs contend that the activities of the defendant raises the presumption of undue influence which shifts the burden of proof, which is normally upon the contestants, to the proponent. The plaintiffs cite many cases from other jurisdictions in support of their contention. In the case of Myers v. Myers, 130 Okla. 184, 266 P. 452, this court stated as an established rule that:

"Where undue influence is one of the grounds for the setting aside of a will and a person assists in the preparation of same and is present at the time of its execution and is a beneficiary under the will, and other beneficiaries are excluded from the presence of the testator and a confidential and fiduciary relationship exists, the presumption of undue influence arises which calls for a careful scrutiny by the court, and the burden is upon the proponent to show the absence of undue influence."

Therein this court found that the relationship existing between the testator and the beneficiary was not of sufficient confidential nature to warrant application of the above-quoted rule. In the Lillie case, supra, it is stated:

"As stated in Re Estate of Llewellyn, 296 Pa. 74, 145 A. 810, 813, 66 A.L.R.

222; 'The active part which gives rise to the presumption must go to the substance of the testamentary act, not to some mere formal matter. In the absence of such procurement, no burden of proof rests on the legatee.' No presumption of undue influence is raised when the activity of the beneficiary in the preparation, drafting, or execution of the will was done at the request of testator. 68 C.J. 760, Note 75 (a) and (b)."

In the case at bar there is no evidence that the activity of the defendant went to the substance of the testamentary act. At most, the evidence, as disclosed by the record, indicates that a condition existed where an unscrupulous person could have exercised undue influence, but in the case of Peace v. Peace, 149 Okla. 123, 299 P. 451, this court held:

"Power, motive, and opportunity to exercise undue influence do not alone authorize the inference that such influence has in fact been exercised."

From an examination of the record as a whole, we are of the opinion that the order and judgment of the trial court is not against the clear weight of the evidence.

The judgment is, therefore, affirmed.

HALLEY, V. C. J., and CORN, GIBSON, and O'NEAL, JJ., concur. JOHNSON, J., dissents.