In the Matter of the ESTATE of Samuel Hugh WADSWORTH, Deceased.

No. 35347.

Supreme Court of Oklahoma.

July 7, 1954.

Rehearing Denied Sept. 14, 1954.

Arney & Barker, Clinton, for plaintiffs in error.

Darrah & Cook, Clinton, for defendants in error.

PER CURIAM.

This case involves the contest of the will of Samuel Hugh Wadsworth, deceased. The County Court of Dewey County admitted the will to probate. The District Court upon appeal and trial de novo denied probate and the proponents have appealed.

Samuel Hugh Wadsworth died March 31, 1951, at the age of 71, leaving the will in question, dated February 11, 1950, in which he bequeathed to his children Melvin Wadsworth, Mary Jane Etta, Johnie Hugh Wadsworth, Vergie Courtney and Dorothy Wadsworth one dollar each; these persons are the contestants. The will then left the other personal property of the deceased

and a life estate in his real property to his widow Carrie E. Wadsworth, and devised his real property to his son Roland Samuel Wadsworth, subject to the widow's life estate; the widow and the son Roland Samuel are the proponents of the will.

The contestants claimed that the deceased was incompetent to make a will, was of unsound mind, that he had been adjudged to be of unsound mind, did not understand the nature and consequence of his acts, and did not have testamentary capacity. They also claimed that at the time the will was executed the decedent was under undue influence, menace, duress and coercion of Roland Samuel Wadsworth, the son, or of persons acting under or through him or in his name.

The will was drawn by an attorney. The testator and his wife and son came to the office of the attorney together, and the wife and son remained there with the testator while the terms of the will were discussed with the attorney, and also while the will was drawn and executed. The wife and son thus present are the proponents and principal beneficiaries of the will. The attorney who wrote the will testified on cross-examination that he had known the testator fifteen or twenty years, possibly longer, that the testator was not normal and that he was a person of low mentality. The testator and his wife had previously executed a deed by which they had attempted to convey their farm to the son Roland Samuel Wadsworth; they had been told that this deed was not an effective conveyance, probably because the grantor had been adjudged to be incompetent before the deed was executed; all the parties to this deed were in the office of the attorney who drew the will, to inquire about the validity of the deed. They were advised by the attorney that the deed was probably not good, and were further advised that they might get the same ultimate result by will, whereupon the will was drawn and executed. The attorney testified that in his opinion the testator had sufficient mental capacity to carry in mind and understand in a general way the nature and situation of his property and his relations to those naturally having some claims to his remembrance. The attorney testified that the son did not urge the father to make the will but helped in listing the names of the members of the family for use in drafting the will.

The testimony of the attorney who drew the will was corroborated by that of the other attesting witness, an abstracter who was present when the terms of the will were discussed, and who typed the document as directed by the attorney.

For the contestants, a retired doctor of medicine who had attended the testator's family a few times testified that the testator's intelligence was limited, but that he did not think the testator was incompetent. He explained that he thought the testator was capable of transacting business, but that if he (the doctor) was about to trade with the testator he would want the consent of the testator's family. This witness concluded that the testator was not of sufficient mentality to do his own business without aid. On cross-examination the doctor testified that the testator would know his property, would know his heirs, his relationship to them and to the things in which he was chiefly interested. He also testified that the testator's mental condition was such that he could easily be influenced by others.

Mr. Christian, a neighbor of the deceased, testified that the testator wasn't a man of normal intelligence, that he was weakminded, and that anyone could be nice to the testator and buy from him at a fraction of true value. That the testator was a pretty fair farm hand but had to be told what to do. On cross-examination this witness testified that Mr. Wadsworth knew what property he owned, and knew who he wanted to have it, and was likely to have left it to anyone with whom he was pleased at the moment.

For the contestants, Mr. Richardson a neighbor testified that Mr. Wadsworth was not of normal mentality, that he was easily influenced, that he was not feeble-minded, that he didn't have sufficient mentality to transact his own business without help from others, and that people he liked could get him to do things he should not do. On

cross-examination the witness testified that Mr. Wadsworth knew he had a place, would know how many head of cattle or horses or anything of that kind he had, knew the farm machinery he had, and knew who his children were, his wife and his heirs, and that if Mr. Wadsworth went to the attorney's office and told the attorney to draw a will he knew what he was doing. The witness made clear that he thought the testator was very easily influenced by others.

Mr. Bolieau, a neighbor of the deceased and witness for the contestants, testified that Mr. Wadsworth was not normal, that one could visit him and talk him into selling property for half its worth. On cross-examination he testified that Mr. Wadsworth was not normal, that no one could visit him and talk him into selling property for half its worth. On cross-examination he testified that the testator knew that he had a farm and the way in which he got it and the limited nature of his ownership, who his children were, that he understood he could not mortgage his place, and "if he liked one of the children and they would talk to him about deeding them that place, I am satisfied that they could talk Sam into doing it. But now they might not against his will, he would have to want to, you see, but he could be influenced in making a will to any of the children."

Mr. Tom L. Ruble, an attorney, witness for contestants, testified that the testator and his son Roland requested Mr. Ruble to draw a will, and that he declined to do so because he was afraid it might not be the testator's will; that the testator's mental condition was such that he easily could be influenced by others. When asked if it was his opinion that the testator was being influenced he answered "Oh, I thought perhaps he might be, that is the reason I didn't do it." When asked the specific question, "That there was no evidence of any undue influence, was there Tom, only that the boy was along?" the witness answered "Well, I guess I should express it like this, Evertt, you know you get ideas, you have them and I have them, and we all have them, and that is just exactly what I get."

Mr. Rudolph Warfelli, a neighbor, testified for the contestants that Mr. Wadsworth was not of normal intelligence, that he was easily influenced, that he did not know the value of things he bought, and that people sometimes induced him to sell for less than value. On cross-examination he testified that the testator knew what property he had, knew who his heirs were, his children and his wife.

Mr. Parkhurst, a neighbor, testified for the contestants that the testator was not of normal mentality, that in making a deal the last man that got to him was the one that would get to him, that he was easily influenced. On cross-examination this witness stated apparently with some reluctance, that the testator knew his property and knew his children.

Mr. John Warfelli, a neighbor, testified for the contestants that the testator was "a little below average, anyway" as to mentality, that he was easily influenced, but that " * * * I wouldn't just really say he was feeble minded."

Mr. C. L. Smith, a neighbor, testified for the contestants that Mr. Wadsworth was easily influenced. The question put was "now based upon your association and your acquaintance with him, and your observations of him, would you say that he was a person of normal mentality?" and the answer was "Well, I wouldn't know. He was easily influenced." On cross-examination the witness testified that the testator knew what property he had and knew his children. It was developed on cross-examination that the witness had farmed the testator's land, and the witness said he felt it was all right to deal with the testator along this line; on redirect examination in response to a leading question the witness said he was especially careful in dealing with testator.

Mr. Olin Moore, a grocer, testified for the contestants that the testator was not "of an average mind", and that he did not believe the testator was competent to carry on his business. When asked to explain why he reached this conclusion he stated "Well, at different times, when he and his wife were there for instance to buy a week's supply of groceries, maybe he would

buy ten loaves of bread, maybe three or four dollars worth of steak, without any means of refrigeration or anything like that —just different ways that he bought, I would say that he wasn't of an average mind." He further explained that the testator had run a credit account with him, which was to have been paid after harvest with the testator's rent money, but that instead of paying the account the testator bought a plow with the rent money. He then explained that the testator later gave him a mortgage on a cow and finally paid the account.

Dorothy Wadsworth, a daughter of the testator, and one of the contestants, testified that her brother Roland told her several years before her father's death that he (Roland) was trying to get his father to make him a deed to the farm. Also that Roland influenced his father to pay $496 for a used plow.

Mrs. Eva Jean Johnson, a registered nurse, testified as a proponent's rebuttal witness that she helped nurse the testator about 45 days during his last illness, and that she thought him to be of below average intelligence, but that she was also of the opinion that he had sufficient mental capacity to know and understand and carry in mind in a general way what property he had, who his relatives were, and what he would want done with his property in the event of his death.

Dr. Ryan, family physician of the deceased, who attended him for several weeks in his last illness, testified on proponent's rebuttal, that by request he examined the testator with the idea in mind of determining his mental capacity, and in his opinion the testator had sufficient mental capacity to know and understand and carry in mind in a general way the nature and situation of his property, his relation to those naturally having some claim to his remembrance. He testified that a few days before he died Mr. Wadsworth asked him (the witness) "Doctor, do you think that I am crazy?" and also "Do you think I am able to leave my property to Roland?" The record is not wholly clear about the background of facts which provoked these questions, but

it seems probable that a hearing was soon to be held on a petition to restore the testator to competency, and that the testator was concerned about the possible decision at such a hearing. The doctor did think that the testator was feeble-minded, but did not go along with the idea that he was necessarily easily influenced.

It was stipulated that the testator had been adjudged to be incompetent several years before he had executed the will in question. From the exchange of remarks between counsel it seems apparent that there was no dispute but that the guardian for the testator had been discharged several years before the will was executed, and that a petition to restore the testator to competency had been filed but not heard at time of his death.

Mr. and Mrs. Elva Carr testified that they had gone to the Wadsworth farm on several occasions with the son Roland to take groceries to his parents, and that Mr. Wadsworth knew what property he had, who his family consisted of, and had enough mentality to know what he wanted done with his property at death. There was other rebuttal evidence along the same lines.

It is clear from all the evidence that the testator was a man of low intelligence. The testimony also establishes that he was easily influenced. It seems clear from the record that both the testator and his wife were people with very little education, and that they lived in a condition of squalor repulsive to most people. Consequently all of their children except one were taken away from them at the instance of persons interested in the welfare of the children, when such children were quite young, and the children were reared by others in surroundings that were doubtless more normal and more pleasant to the children. One child was in the State Hospital at Supply. Another was adopted, took a new name, and resided at Enid. Another resided in Phoenix, Arizona. Another resided at Edmond, Oklahoma, and still another was in college at Edmond. Although three of the children lived within a few miles of their parents they rarely visited the parents. It seems clear that the condition of life of the par-

ents was repulsive to the children, and equally clear that there was nothing the children could do about the matter under the circumstances.

■ Only Roland remained at or near the home of his parents, and without regard to his motives it is clear from the evidence that he, the youngest child, was the one who helped his parents in their declining years, and whom they knew best. The will is therefore not unnatural under the circumstances. We do not have to be critical of the contestants to say that the will was a normal and natural devise under the unfortunate circumstances which broke the family apart. When the mother was asked "Roland isn't the only child you have, is he? she answered "I know that, he isn't the only child but he is the only one that helped us."

The evidence of the two attesting witnesses, that of the registered nurse, and that of the attending physician and the widow is very strong. There is no showing of bias or interest in the attesting witnesses or the physician. The physician testified that the testator asked him questions that indicated his wish to and concern about leaving his property to his son at death, questions that were intelligent under the circumstances.

■ The rules of law which govern our consideration of the evidence summarized above have been stated by this court many times and in many cases and they are substantially as follows: upon it being established that a will was duly executed the contestants have the burden of proving testamentary incapacity or undue influence. A will contest is a case of equitable cognizance and on appeal this court will examine the whole record and weigh the evidence. It does not follow that Mr. Wadsworth could not make a will simply because he had been adjudged incompetent. 15 O.S.A. § 24; In re Nitey's Estate, 175 Okl. 389, 53 P.2d 215. It is sufficient if the testator can understand and carry in mind in a general way the nature and situation of his property and his relations to those who

naturally have some claim to his remembrance and those in whom and the things in which he has been chiefly interested. In re McClure v. Kerchner, 107 Okl. 28, 229 P. 589; Toombs v. Matthesen, 206 Okl. 139, 241 P.2d 937. The ability to transact business is not the true test of testamentary capacity. In re Tayrien's Estate, 117 Okl. 216, 246 P. 400.

■ Using the rules stated in the above cases, it is our opinion that the contestants have not discharged the burden of evidence that is upon them. Lay witnesses are not ordinarily familiar with these rules and they too often confuse the ability to transact business with mental capacity to make a will, and this confusion colors the testimony of the most honest witness. When the attention of several of the contestants' witnesses was directed to the specific matters of whether or not Mr. Wadsworth understood in a general way the nature of his property, and his relations to those who naturally had claim to his remembrance, they concluded that he did so know and understand. Thus the full extent of the testimony by the witnesses for the contestants was that the testator was a man of low mentality and could have been easily influenced. We therefore conclude that the decision of the trial court is against the weight of the evidence.

It is ordered that the decision of the trial court be reversed and that the will be admitted to probate.

HALLEY, C. J., JOHNSON, V. C. J., and CORN, DAVISON, and BLACKBIRD, JJ., concur.

WILLIAMS, J., dissents.

This Court acknowledges the services of Attorneys Alpheus Varner, A. G. Windham and E. O. Clark, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the Court.