Annie Isabelle BROWN, now Imotichey, Eliza Jane Brown, now Bose, and Bogan Brown, Plaintiffs in Error,

v.

Charles A. THOMASON, Defendant in Error.

No. 38772.

Supreme Court of Oklahoma.

July 19, 1960.

King & Wadlington, Ada, for plaintiffs in error.

Willoughby & Cannon, by Calvert L. Cannon, Ada, for defendant in error.

BERRY, Justice.

In the County Court of Pontotoc County, Oklahoma, Charles A. Thomason, defendant in error, hereinafter referred to as

"proponent", on the 27th day of June, 1958, filed a petition for the probate of the purported will of Willis Brown, dated November 27, 1957. Willis Brown, who was an enrolled full-blood Chickasaw Indian, will hereinafter be referred to as "testator".

On August 11, 1958, Annie Isabelle Brown, now Imotichey, Eliza Jane Brown, now Bose, and Bogan Brown, plaintiffs in error, hereinafter referred to as "contestants", filed a contest of the will. On August 14, 1958, the contest was denied by the county court and the will was admitted to probate. On the following day, proponent was appointed executor. The contestants thereupon appealed to the District Court of Pontotoc County. The district court, on trial de novo, in effect affirmed the county court by ordering that the will be admitted to probate. From said order, the contestants appealed to this Court.

Testator, at the time of his death, was a resident of Pontotoc County, Oklahoma. He was then approximately 55 years old and not married. He left as heirs-at-law the contestants and Lizzie Monroe who were nieces and nephew of deceased. Lizzie Monroe was named a beneficiary under the will but did not contest the probate of same. The proponent and one John Polk were the only other beneficiaries named in the will.

Testator's estate consisted of an interest in allotted restricted lands, mineral rights and some money on deposit with the Bureau of Indian Affairs.

The contestants of the will alleged in part that the will was not executed according to law; and that at the time of making the will testator was incompetent to make a will; that testator was suffering from tuberculosis in an advanced stage and other illnesses; that he was weak of body and mind and was addicted to alcohol; that he was unable to resist the demands and undue influence of people seeking to procure such a will, and that testator's execution of the will resulted from undue influence of proponent and others.

In their petition in error contestants urge 11 points of alleged error on the trial court's part. The contestants in their brief, however, only urge that the trial court erred in the following particulars:

1. In not finding that testator was incompetent when he made the will.

2. In refusing a certain witness' testimony in regard to the competency of the deceased.

3. In not finding that testator was under undue influence in the making of said will.

We shall discuss the alleged errors as urged and set out in the contestants' brief in the above order that same are stated.

The contestants first contend that testator was incompetent to make the will. The contestants' evidence tended to prove that testator from time to time used alcohol excessively; that he attempted to obtain money by a promise to make a will in one witness' favor; that in their opinion testator was not competent to make a will. No evidence, however, was introduced that at the time of making and executing the will testator was incompetent or was under the influence of alcohol.

Contestants' evidence did tend to prove that testator was forgetful and that he borrowed money and made various promises in order to obtain credit and dissipated funds quickly and for nonessentials, but such evidence does not show that testator was incompetent to make a will at the time he executed the will in controversy. 94 C.J.S. Wills § 28, p. 726. Contestants' evidence did not show that the testator did not know the extent of his property and what disposition he wished to make of same.

Contestants showed that in the will one of the contestants was named incorrectly as "Annie Kilcrease". As we understand the facts, her correct name was Annie Isabelle Brown Imotichey as of date the will was executed. One witness testified that prior to World War II Annie was married to a person whose last name was "Kilcrease". The mistake in Annie's name is only a circumstance indicating possible confusion on the part of the deceased but does not establish that testator was wanting in testamen-

tary capacity at the time he made the will. In using the name that testator used, there is no dispute as to whom he had in mind.

The proponent's evidence showed that testator could read and write (in fact, one witness testified that deceased had a beautiful handwriting); that he was sober and competent at the time he made his will; that he was enjoyable to talk to and chatted quite lengthily and that he was of average intelligence.

The county judge, before whom testator appeared to acknowledge this will immediately after its execution and witnessing, testified that she inquired concerning testator's bequests and his property; that testator was competent; that he was not under the influence of alcohol and that she was close enough to him to smell his breath.

In the case In re Mason's Estate, 185 Okl. 278, 91 P.2d 657, 658, this Court said in the first three paragraphs of the syllabus thus:

"1. A testator has a sound mind for testamentary purposes when he can understand and carry in mind, in a general way, the nature and situation of his property, and his relations to the persons around him, to those who naturally have some claim to his remembrance and to those in whom and the things in which he has been chiefly interested. He must understand the act which he is doing and the relation in which he stands to the objects of his bounty and to those who ought to be in his mind on the occasion of making a will.

"2. In determining the mental status of a testator, presumption of sanity must be indulged, and, where a will appears to be a rational act performed in a rational manner, such presumption and such apparently rational act amount to evidence of testamentary capacity.

"3. The testamentary capacity of a testator must be determined as of the time of the making and execution of the will. In determining that question, prior and subsequent acts have bearing only to the extent of assisting in determining the mental status of the testator at the time of the execution of the will."

We are of the opinion that the trial court's finding that the deceased was competent when he made the will is sustained by the clear weight of the evidence.

Contestants' next contention that the trial court erred in refusing testimony of contestants' witness concerning his opinion in regard to the testator's competency to make a will is not well taken. An examination of the record shows that this particular witness was permitted to testify in this regard.

Contestants' third contention is that testator was under undue influence in the making of his will. Contestants' evidence tends to prove that proponent had known deceased for many years; that proponent had rented a farm from deceased; that proponent and his wife had been close to deceased over the years and had paid or given him money or many occasions; that deceased had received a letter from proponent and his wife which in part read: "I'll be there early as I can on the morning of the 27th * * * I went to a lawyer and he wants us to be in Ada about 10 or 11." The evidence shows that the will was drafted on the 27th of November by a lawyer in Ada and that proponent and one John Polk, another beneficiary named in the will, waited in the outer office while the lawyer was consulting with deceased about his will. Proponent admitted he paid the lawyer $25 for drafting the will and that proponent and his wife had possession of the will until it was offered for probate, and further that proponent and John Polk were not related in any way to deceased and were not of Indian blood.

Proponent's evidence tends to prove that testator was re-admitted to a hospital for his tubercular condition in July, 1957, and that he remained there most of the time until the day before he went to the lawyer's

office with proponent and John Polk on the morning of November 27, 1957. Testator returned home a few times during said period for short visits. This period of more than three months that testator was in the hospital is significant. The inference can be drawn that while testator was in the hospital he was not under the influence of proponent or his wife or of any of the beneficiaries named in the will and that he did not partake of alcoholic beverages during said time. If testator were removed from the influence of proponent and others who might wish to wrongfully exercise influence over him, for a period of three months, and if he were sober during said period it would detract from contestants' contention that the letter heretofore quoted in part shows that proponent was exercising undue influence over testator at a time when he was ill and under the influence of alcohol.

The evidence tends to show that proponent and Lizzie Monroe were both good to testator and that he sought their company and companionship in preference to that of contestants. The record, however, does not show testator's reason for naming John Polk a beneficiary.

Contestants contend that the law imposes "a burden on strangers to the blood of testator who receive extraordinary benefits from the will and who are shown to be in a position where they might exercise a nefarious influence on the testator to prove lack of undue influence, testamentary capacity, and that testator acted with the full knowledge of the value of his estate."

In In re Lillie's Estate, 195 Okl. 597, 159 P.2d 542, 543, it is stated in the forth paragraph of the syllabus that "The mere existence of confidential relation between testator and beneficiaries under his will does not raise a presumption that the beneficiaries have exercised undue influence over the testator and does not cast upon the beneficiaries the burden of proof upon the issue of undue influence." The fifth paragraph of the syllabus to the cited case reads as follows:

"The activity on the part of beneficiaries which gives rise to the inference of undue influence must go to the substance of the testamentary act and in the absence of such procurement, no burden of proof rests upon the legatee."

In the cited case undue influence was charged to strangers to the blood of testator who took as beneficiaries.

It was contended in Toombs v. Matthesen, 206 Okl. 139, 241 P.2d 937, 941, that the "activities of the defendant raises the presumption of undue influence which shifts the burden of proof, which is normally upon the contestants, to the proponent." This contention was rejected. In the cited case we quoted with approval from Re Estate of Llewellyn, 296 Pa. 74, 145 A. 810, 813, 66 A.L.R. 222 to the effect that " 'The active part which gives rise to the presumption must go to the substance of the testamentary act, not to some mere formal matter. In the absence of such procurement, no burden of proof rests on the legatee.' No presumption of undue influence is raised when the activity of the beneficiary in the preparation, drafting, or execution of the will was done at the request of testator. 68 C.J. 760, Note 75(a) and (b)."

■■ . The duty resting upon a proponent of a will was stated in the third paragraph of the syllabus to In re Wah-Kon-Tah-He-Um-Pah's Estate, 109 Okl. 126, 234 P. 210, to be thus:

"The proponents of a will are required, under the law, to make a prima facie showing that the instrument tendered for probate was executed and attested in the manner provided by statute, by a person possessed of testamentary capacity, acting voluntarily and not under duress or undue influence. In case of a contest on the grounds of lack of formality in the execution and attestation, or lack of testamentary capacity of the testator, or upon the ground that the testator was acting under duress or undue in-

fluence in the execution of the instrument, and a prima facie showing has been made by the proponents entitling the will to probate, the burden rests upon the contestants to establish some ground of contest which would destroy the instrument as a will."

In our opinion the record shows that proponent made a prima facie case showing that the will was executed and attested in manner provided by statute; that testator at time of execution of will was possessed of testamentary capacity; that in making the will he acted voluntarily and not under duress or undue influence. The record fails to show that the prima facie case so made by proponent was overcome by the evidence.

The judgment of the trial court is affirmed.

DAVISON, C. J., WILLIAMS, V. C. J., and JOHNSON, BLACKBIRD, JACKSON and IRWIN, JJ., concur.