In the Matter of the ESTATE of Hubert Sylvester BRACKEN, Deceased.

Olline Bracken FRENCH, Plaintiff in Error,

v.

Pearl ROBBINS, individually, and as administratrix with the will annexed of the estate of Hubert Sylvester Bracken, Deceased, Defendant in Error.

No. 42524.

Supreme Court of Oklahoma.

Oct. 6, 1970.

**378**

Carl W. Davis, Oklahoma City, for plaintiff in error.

Bonds, Matthews & Mason, Muskogee, for defendant in error.

BERRY, Vice Chief Justice:

Plaintiff in error, hereafter designated contestant, has appealed from a judgment entered after trial de novo, affirming an order of the county court admitting the will of Hubert Sylvester Bracken to probate.

Factual background and evidentiary matters bearing upon the issues are uncomplicated, and do not require extensive summation. Actions involving will contests are of equitable cognizance, and this Court will examine and weigh the evidence on appeal, but will not disturb the findings and judgment of the trial court unless clearly against the weight of the evidence. In re Estate of Weber, Okl., 471 P.2d 919.

Testator, a retired merchant and long-time resident of Muskogee, Oklahoma, was 89 years of age at time of death in a local hospital December 13, 1966. The will involved had been executed August 9, 1966, at testator's home, in presence of near neighbors who had known testator many years and saw him daily. At testator's request proponent, a sister and sole beneficiary under the will, and her husband had moved to Muskogee and made their home with testator 15 years prior to his demise. After the will was executed testator gave the instrument to proponent and it was placed in a lock box and offered for probate following testator's demise. The will was made at testator's request, and executed on the front porch of his home August 9, 1966, in presence of two attesting witnesses, and a notary public who acknowledged execution and witnesses' attestation of the instrument. Also present were attorneys who prepared the will offered for probate.

Contestant, a niece, opposed admission of the will to probate upon grounds testator lacked testamentary capacity, and because the will was produced through fraud and undue influence. The county court determined factum of the will and ordered admission to probate. Contestant appealed to the district court and, after trial de novo, the court found testator was of sound and disposing mind, competent to dispose of his estate by will, and was not acting under fraud, duress, or undue influence. Appeal from such findings and judgment is based entirely upon the claim that both lack of testamentary capacity, and that this will was the product of fraud and undue influence were established by clear weight of the evidence.

Bearing upon execution of the will, the attesting witnesses (Mrs. Love and Mrs. Goodall) testified testator signed the instrument in their presence and they signed as witnesses in his presence and presence of each other. Both were near neighbors and had known testator many years. They testified unequivocally testator appeared to be of sound mind and memory, in possession of his faculties, mentally alert, and gave no appearance of being under duress. Execution and attestation of the will was corroborated by the notary public who took acknowledgment of the witnesses.

Relative to testator's mental and physical condition proponent testified testator was hospitalized and checked for arthritis in July, 1964, but after return home there was no change in his physical condition although he sometimes used a cane. In September 1966 testator developed pneumonia and was hospitalized until October. After five days in a nursing home testator returned home and, although pale and weak, got better and made trips to his farms. January 4, 1966, testator went to the bank and arranged for proponent to draw checks upon his account, although proponent drew no checks until after testator entered the hospital November 24th, prior to his demise on December 13, 1966.

A service station operator (Hall) testified deceased traded with him for years. During July, August and September in 1966 deceased came to the station three or four times weekly to purchase gas, oil and other supplies. Deceased appeared normal and would stand up and sign invoices for purchases and witness never knew of any physical disability. The invoices were introduced in evidence. Deceased would come to witness's news stand every evening for a paper, his condition appeared normal, and deceased would discuss world events and condition of the country with the witness.

One witness (Evans) had known testator 35 years, and had operated a general store in a nearby community 17 years. Deceased would come to the store about twice a month and make purchases which he would take to other people. The witness would fill out checks to be signed by deceased, who appeared to be of sound mind and capable of handling his affairs. Checks signed by testator on August 5th and 20th were introduced in evidence.

Another witness (Loson) had known testator 12–14 years and, resulting from negotiations with testator, entered into a contract to purchase 80 acres of land adjoining witness's farm. Contract was signed July 23, 1966, at home of testator, who appeared of sound mind and capable of handling his own affairs. The contract made no provision for possession and testator objected to giving possession before January 1, 1967, because of growing crops.

Contestant, had known testator all her life, had lived with her parents on one of his farms where testator visited frequently, until her father's death in 1965. Prior to her father's demise testator always talked, but at her father's funeral testator seemed changed, did not recognize the witness, stared into space and did not respond to questions, and was feeble and had to be helped into the house. Witness next saw testator when hospitalized in September 1966, but deceased was unresponsive.

Testator's tenant testified testator changed after latter part of 1965, was sick, seemed to be disturbed, would hardly talk to witness, or would undertake to talk and quit, and did not work anymore. The proponent's husband would bring testator to the farm and testator would just sit under the trees, and it was hard for witness to talk with him because he seemed to be in a study. Cross-examination established testator had given witness checks for labor during August 1966, which witness endorsed. The last year testator left farming matters up to the witness. When asked concerning testator's handling of business affairs witness stated: "he did not such as that."

A nephew by adoption testified in contestant's behalf, to having known and visited with testator about 40 years and particularly the last 15 years of his life. The last visit having occurred about December 22, 1965. The witness's testimony was directed principally toward observations of testator's failing health, weakened physical condition, and unresponsiveness to witness's efforts to talk with him. Witness attempted to detail testator's general physical debility during July and August 1966, typified by failure to speak when spoken to, sitting with hat on and usual dependence on a cane.

A psychiatrist (Hellems) testified as a medical expert. This witness had neither seen nor treated testator.

An extended hypothetical question, attempting to detail matters relating to testator's physical condition, was a basis for inquiring for a medical opinion whether testator was of sound mind and memory at time this will was executed? The question detailed numerous matters such as testator's failure to work at his farm after July 12, 1964; had become infirm, used a cane and hands shook; would not talk to or make response to the niece and nephew when they attempted to make conversation; sat in the living room with hat on, cane between legs watching television, even after the machine was turned off. The medical witness stated

his opinion was testator was not of sound mind and memory when the will was made.

The witness then reviewed medical records reflecting testator's medical history for period of three days hospitalization in July 1964, twenty days in September—October 1966, and nineteen days hospitalization prior to death in 1966. These records of first 1966 hospitalization indicated testator suffered cerebral insufficiency due to cerebral arteriosclerosis and pneumonia complicated by probable myocardial infarction due to arteriosclerotic heart disease with coronary thrombosis. Records showed testator's death December 13, 1966, with above mentioned conditions given as cause of death. There was no medical testimony relating to testator's condition when the will was executed. The medical witness testified testator probably was not in contact with reality after death of his brother in December 1965, and would be considered incompetent during 1966. On cross-examination this witness admitted lack of knowledge of testator's condition on August 9, 1966. Medical testimony is admissible on the issue of mental capacity. However, the trier of fact may follow his own conviction based upon his experiences, observations and common knowledge, although contrary to the expert opinions in civil cases. See Gulf Oil Corp. v. Hughes, Okl., 371 P.2d 81.

■ Testator lived over four months following execution of his will. No evidence indicates any desire to change, alter or revoke the will executed. Advanced age, senility, confusion, and ill health are insufficient to justify denying probate of a will if testator possessed testamentary capacity at the time of execution. In re Williams' Estate, 207 Okl. 209, 249 P.2d 94; King v. Gibson, 207 Okl. 251, 249 P.2d 84. Testamentary capacity to make a will is determined as of the time a will is executed. Evidence of testator's acts, either prior or subsequent to execution, are to be considered only to extent of determining mental status when a will was executed. Standing alone, such evidence is neither

controlling nor sufficient to establish lack of testamentary capacity. In re Fletcher's Estate, Okl., 269 P.2d 349; King v. Gibson, supra.

Contestant relies upon our decision in In re Estate of Lacy, Okl., 431 P.2d 366, as authority for argument testator's disposition of his affairs was an unnatural will which, without other evidence, required denial of probate. However, in Lacy, supra, we pointed out the natural preference for those close to and helpful to a testator, especially where a member of the family completely devotes effort and energy to caring for testator. Testator had lived with proponent and her husband many years, enjoyed the benefits of their home, and relied upon both for personal care and assistance with his affairs. The evidence clearly established reasonableness of testator's disposition of his affairs. Also see Munson v. Snyder, Okl., 275 P.2d 249.

■ Contestant also contends the will was the product of fraud and undue influence. The argument is based upon review of the evidence relating to testator's advanced age and failing physical condition. Contestant asserts testator's mental condition was such as to permit influence and imposition by scheming and designing persons. Upon this basis it is urged proponent, and her husband, were in a position to impose their will upon testator and by subtle misinformation were able to prejudice testator and secure execution of this will. The record is devoid of evidence to show fraud or exercise of undue influence. Undue influence necessary to invalidate a will is influence which destroys the testator's free agency at the time the instrument is made. Power, motive, or opportunity of relatives to exert such influence at time of execution, standing alone, will not suffice. King v. Gibson, supra; Brown v. Thomason, Okl., 354 P.2d 451, and cases there cited.

■ The trial court found testator was of sound, disposing mind and competent to dispose of his estate, and not acting under duress, fraud or undue influence when this

will was executed; that the will was legally executed as required under 84 O.S.1961 § 55. These findings are clearly sustained by the evidence and the trial court's judgment admitting the will to probate was correct.

Judgment affirmed.

All Justices concur.