In the Matter of the ESTATE of SA-MOCHEE, Fullblood Seminole Roll No. 1285, Deceased.

Robert SAMOCHEE and Tema Samochee, Appellants,

v.

Nora BRUNER, Executrix of the Estate of Samochee, Fullblood Seminole Roll No. 1285, Deceased, Appellee.

No. 48463.

Supreme Court of Oklahoma.

Oct. 28, 1975.

Richard S. Roberts, Wewoka, for appellants.

T. H. Williams, Jr., Wewoka, for appellee.

BERRY, Justice.

This is appeal from trial court's order admitting will to probate.

· Samochee [testator], a fullblood Seminole Indian who spoke the Seminole language but could not speak, read, write, or understand English, executed a will on November 15, 1973.

In the will he gave his wife, Ida Bruner Samochee, his "love and affection." He devised his one-half mineral interest in three 40 acre tracts to his two sons by prior marriage, Robert Harjo, a/k/a Robert Samochee, and Tema Harjo, a/k/a Tema Samochee [appellants]. They were his only children. He left remainder of his estate to "my good friend, Nora Bruner", who was also named executrix of the estate. Nora Bruner was the wife of one of testator's step-sons.

Ida Bruner Samochee died in April, 1974, and testator died on December 12, 1974. Appellants were testator's sole heirs.

On December 23, 1974, Nora Bruner filed petition requesting court admit the will to probate. Appellants Harjo filed petition objecting to will on nine grounds which, for purposes of this appeal, may be summarized as follows:

(1) The will was not subscribed, executed, and attested as provided by 84 O.S.1971 § 55; (2) testator executed the will under undue influence of Nora Bruner; (3) testator did not possess sufficient men-

tal capacity to know and understand the value, nature, and effect of said purported will.

The trial court entered order admitting will to probate. It found that when testator executed will he was of sound mind and memory, and fully understood nature and consequences of will and its disposition of his property, and was not acting under undue influence, duress, menace or fraud, and the will was the free and voluntary act of testator. Appellants appeal.

■ They first contend trial court erred in admitting will to probate without permitting appellants to offer any testimony contesting the will.

The record indicates that after proponents introduced their evidence, their attorney requested court to admit will to probate. Appellants' attorney objected questioning sufficiency of proponents' evidence. The trial court stated he was going to admit will to probate. Proponents then rested and appellants offered their evidence.

Appellants contend trial court's statement indicates he had already ruled against them and contend this denied them a fair trial.

Where proponents make prima facie showing entitling will to probate, the burden rests upon contestants to establish some ground of contest which would destroy instrument as will. *Brown v. Thomason*, Okl., 354 P.2d 451. The above facts indicate trial court's statement was ruling that proponents had made prima facie showing entitling will to probate, and appellants had burden of establishing some ground of contest which would destroy instrument as will. We conclude this contention is without merit.

Appellants next contend trial court erred in admitting will to probate because will was not published as required by 84 O.S. 1971 § 55.

Section 55(3), supra, provides in part:

"The testator must, at the time of subscribing or acknowledging the same, declare to the attesting witnesses that the instrument is his will."

The evidence indicates testator went to office of Bureau of Indian Affairs in Seminole and gave instructions to M. Dean Storts, an attorney, concerning preparation of testator's will. Josephine Chastain acted as interpreter.

On November 15, 1973, testator returned to the office and executed the will. Shirley Henneha and Robert Kernell, Jr., employees of the Bureau, witnessed the will. Mr. Storts and Josephine Chastain were also present.

■ Appellants contend evidence indicates Josephine Chastain acted as interpreter and asked testator in Seminole whether instrument was his will. They contend evidence indicates testator merely nodded his head and they argue mere nodding of head cannot constitute publication required by § 55, supra. We do not agree.

In *In re Belmore's Estate,* 189 Okl. 86, 113 P.2d 817, we stated:

"* * * No formal request that the witness sign, or express declaration that the instrument is his will, is required. It is sufficient if the testator by words or conduct conveys to the witnesses the information that the instrument is his will, and that he desires them to witness it."

In *In re Davis' Estate,* 171 Okl. 575, 43 P.2d 115, we held in paragraph 3 of the syllabus:

"* * * any declarations or gestures made in response to inquiry as to testator's intention or desire, which clearly convey his thoughts or intentions, constitute a sufficient method of expressing said intentions and desires."

See also *King v. Gibson,* 207 Okl. 251, 249 P.2d 84; *Speaks v. Speaks,* 98 Okl. 57, 224 P. 533.

Appellants rely upon *McCarty v. Weatherly,* 85 Okl. 123, 204 P. 632. That case does not hold mere nodding of head is insufficient publication.

There testator spoke Chickasaw and spoke little English. An interpreter read will to testator in Chickasaw and in English before it was executed. Two of the three witnesses could neither speak nor understand the Chickasaw language. Testator spoke no words in English. This Court held the will was not published as required by § 55, supra. In so doing we quoted from *Hill v. Davis,* 64 Okl. 253, 167 P. 465, as follows:

"* * * The declaration that the instrument was her will and the request that the witnesses sign their names thereto as such were made by the decedent in the Creek language, which was understood by one of the witnesses, but not by the others. The declaration and request were interpreted and repeated in English by the one witness to the other two, but the decedent could not understand the same. Held, the declaration that the instrument was her will and the request that the witnesses sign the same were made by the decedent to only one attesting witness, and probate thereof was properly denied; the statute requiring that there be two attesting witnesses to whom the declaration and request must be made."

See also *In re Tiger's Will,* 94 Okl. 103, 221 P. 441.

■ The cited cases hold that where testator publishes will through interpreter, the witnesses must have sufficient knowledge of testator's language to understand questions asked by interpreter and answers given by testator.

Such requirement was satisfied in the present case. Shirley Henneha testified testator stated the instrument was his will, and asked interpreter to ask her to be a witness. When asked if she was sure, she stated:

"Yes. Because I've always, when he —I've always 'interpret' for him when he needed me."

Likewise the other subscribing witness, Robert Kernell, Jr., testified he understood the Seminole language. He testified the interpreter asked testator if the instrument was his will, and testator indicated it was. The interpreter then asked testator if he wanted Kernell to witness the will, and testator indicated he did.

In *In re Klufa's Estate,* 78 Okl. 13, 188 P. 329, we stated:

"* * * The declaration of the decedent in the Bohemian language that the instrument was his will, and the request that the witnesses sign the same was understood by the two witnesses who understood the Bohemian language, and they thus became qualified subscribing and attesting witnesses * * *"

See also *In re Son-Se-Gras' Will,* 78 Okl. 213, 189 P. 865.

■ In will contest it is duty of this Court to examine entire record and weigh evidence for purpose of determining whether judgment of trial court is against clear weight of evidence. *Hubbell v. Houston,* Okl., 441 P.2d 1010.

■ We conclude trial court's finding that will was properly published pursuant to § 55, supra, is not against clear weight of evidence.

Appellants next contend trial court erred in admitting will to probate because proponents failed to prove will was free and voluntary act of testator; and failed to prove testator had sufficient testamentary capacity.

■ A person has testamentary capacity when his mind and memory are such he knows in a general way the character and extent of his property, understands his relationship to objects of his bounty, and to those who ought to be in his mind on occasion of making will, and comprehends nature and effect of the testamentary act. *In re Estate of Lacy,* Okl., 431 P.2d 366. In determining whether testator had capacity to make will the court may consider evidence of testator's mental status, together with his appearance, conduct, acts, habits, and conversation, both before and after ex-

ecution of the will, as would tend to show his mental condition at time of execution of the will. *In re McCurtain's Estate,* Okl., 377 P.2d 210. An unnatural disposition may be considered in determining testator's testamentary capacity. *In re Estate of Lacy,* supra; *In re Smith's Estate,* 197 Okl. 405, 172 P.2d 328.

■ In present case testator was 82 or 83 years old at time will was executed.

Testator and Ida Bruner Samochee resided together for some years. While Ida was visiting one of her daughters she suffered a severe stroke. She continued to reside with this daughter until her death. Testator informed Bureau he needed someone to care for him, and Bureau suggested a nursing home. Testator did not desire to enter a nursing home. At that time testator was residing with Nora Bruner and Bureau suggested Nora care for him. Testator had funds on deposit with the agency and arrangements were made to pay Nora $125 a month.

Testator resided with Nora for approximately eight months prior to November 15, 1973, the date will was executed. In January, 1974, testator visited home where his wife was and remained there until after his wife's death in April, 1974. He then returned to Nora Bruner's home and remained there until approximately 6 weeks prior to his death. He then entered a veteran's hospital in Oklahoma City where he died.

Josephine Chastain, the interpreter, testified testator came to Bureau's office about two months before will was executed. He told her he wanted his one-half interest in 120 acres to go to his sons and his interest in a 40 acre tract to go to Nora Bruner.

She testified she talked to testator on numerous occasions, he was very intelligent, he had a good memory, he knew what he had, and knew what he wanted to do.

She was also present when will was executed. After testator executed will he stated he made will because "If it wasn't for Nora * * * I'd be just like a dog, with no place to live, nobody to take care of me, and she has been good enough to take care of me."

Immediately after testator executed will he appeared before Judge Frank H. Seay, Associate District Judge of Seminole County. Applicable federal statutes required testator to obtain the court's approval of the will. Judge Seay testified he questioned testator, through Josephine Chastain, and testator stated he gave property to Nora Bruner because she had been looking after him.

Dixon Bruner, husband of Nora Bruner, testified testator knew the extent of his property and would have understood nature and contents of will if he had an interpreter. He testified one could carry on a reasonable conversation with testator and testator was not hard of hearing.

Robert Harjo, Madella Harjo, Bessie Johnson, and three of Ida Bruner Samochee's daughters, testified for appellants.

Their testimony was to effect testator did not have capacity to make a will, he was not an intelligent man, and it was necessary to repeat things many times in order to make testator understand. He could not tell one how to get to his property, but could go to it. Testator once stated he had signed certain papers without knowing what they were and he made statements in January, 1974, indicating he had not made will in question. In July, 1973, he made statements indicating he was afraid of being put in jail.

Appellant Robert Harjo testified his parents separated when he was very young, and he resided with his mother. He visited his father once or twice a year. Appellant Tema Harjo did not testify.

In light of above testimony, we conclude trial court's finding that testator had testamentary capacity is not against the clear weight of the evidence.

■ Appellants further contend confidential relationship existed between testator and Nora Bruner, and a legal presump-

tion of undue influence arises where testator makes bequest to one with whom he has confidential relationship. They cite *White v. Palmer,* Okl., 498 P.2d 1401, for proposition that to rebut the presumption of undue influence beneficiary must show either a severance of the confidential relations, or that person making disposition had competent and independent advice in regard thereto.

In *White v. Palmer,* supra, this Court followed *Hubbell v. Houston,* Okl., 441 P. 2d 1010. In the latter case we stated:

> "The rule * * * to the effect that a presumption of undue influence arises when the testator and the beneficiary are in a confidential relationship is limited * * * to a will 'which is inconsistent with claims of duty and affection' and 'when will is drawn by beneficiary.' * * *"

Here an attorney employed by Bureau of Indian Affairs prepared the will. Nora Bruner was not present when it was prepared or executed.

Testator resided with Nora Bruner and she was the wife of his step-son. At time will was executed testator's wife was suffering from serious illness and resided with one of her daughters. When testator executed will he stated he was giving property to Nora Bruner because she was taking care of him. The evidence indicates testator did not have a close relationship with his sons. Under these circumstances the disposition to Nora Bruner does not appear to be inconsistent with "claims of duty and affection."

Since the will was not drawn by Nora Bruner, and the disposition does not appear to be inconsistent with claims of duty and affection, we conclude no presumption of undue influence arose.

We further conclude trial court's finding that will was testator's free and voluntary act is not against the clear weight of the evidence.

Undue influence to invalidate a will is influence which destroys testator's free agency at time instrument is made. *In re Estate of Bracken,* Okl., 475 P.2d 377. Theory of undue influence is that testator has been induced to execute instrument which in form is his will, but which in reality expresses testamentary disposition he would not have made voluntarily. *In re Estate of Newkirk,* Okl., 456 P.2d 104.

Kindness and consideration shown a testator cannot be considered as constituting undue influence which destroys a will. *In re Estate of Newkirk,* supra.

Affirmed.

All Justices concur.