In the Matter of the ESTATE OF
Ruth E. LONG, Deceased.

Nancy RYEL, Appellant,

v.

Vernon PARSONS, Personal Representative of the Estate of Ruth E. Long, Deceased, Appellee.

No. 80613.

Court of Appeals of Oklahoma,
Division No. 3.

Nov. 23, 1993.

Rehearing Denied Jan. 18, 1994.

Certiorari Denied March 9, 1994.

Kyle B. Hadwiger, Ronald R. Hadwiger, Hadwiger & Hadwiger, Cherokee, for appellant.

Donald L. Benson, Morford & Benson, Alva, for appellee.

## OPINION

GARRETT, Judge:

This appeal arises from an order of the district court admitting to probate the last will and testament of Ruth E. Long, Deceased (Decedent), who died on or about April 6, 1992. Appellant, Nancy Ryel (Ryel), contested the will offered for probate by Appellee, Vernon Parsons (Parsons), the Per-

sonal Representative of Decedent's Estate, on the grounds of lack of testamentary capacity and undue influence.

Ryel raises three propositions of error: (1) the court erred in failing to give Decedent's treating physician's testimony substantial weight and in finding that Ryel had not sustained her burden of proof; (2) the court erred in failing to consider evidence of Decedent's mental status, together with her appearance, conduct, acts, habits and conversation before execution of the July 25, 1988 will, as would tend to show her mental condition at the time of execution of the will; and (3) the court erred in failing to consider declarations of Decedent as to her testamentary desire in past years.

A guardian was appointed for Decedent in February, 1988, after being diagnosed with Alzheimer Disease in January, 1988. Her attending physician testified that Decedent could not have understood what she was doing as to disposition of her property at the time she executed her will. He stated that Alzheimer Disease first affected short term memory. If she were asked questions dealing with information stored in her long term memory, she could probably answer correctly, he stated. However, he said this did not mean she understood her actions in disposing of her property.

The fact that a guardian had been appointed for Decedent when she executed the July 25, 1988, will did not prohibit her from disposing of her property by will. At the time the will was executed, Oklahoma law did require that the will be executed in the presence of a district judge. See 84 O.S.1991 § 41(B) (since amended), identical to 84 O.S.Supp.1982 § 41(B), in effect at the time of the will's execution, which provided:

B. The appointment of a guardian or a conservator does not prohibit a person from disposing of his estate, real and personal, by will; provided, that when any person subject to a guardianship or conservatorship shall dispose of such estate by will, such will must be subscribed and acknowledged in the presence of a judge of the district court. Subscribing and acknowledging such will before a judge shall

not render such will valid if it would otherwise be invalid.

Although "medical testimony is admissible on the issue of mental capacity ... the trier of fact may follow his own conviction based upon his experiences, observations and common knowledge, although contrary to the expert opinions in civil cases." *In re Estate of Bracken*, 475 P.2d 377, 380 (Okl.1970). Judge Linder, who attested the will on July 25, 1988, testified he asked Decedent many questions which indicated to him that she knew what she was doing and why she was doing it. He stated:

And I asked her some questions then. I asked her specifically if she knew what a will was. I said, tell me, what is a will? And she said, well, that's a thing that says what's gonna happen to all my stuff when I'm gone. And I asked her if she wanted to execute the will. She said that she did.

Mr. Smith identified the three witnesses, but before that happened, though, I asked her, too. I asked her what day it was, and she told me the day of the month. And I asked her again—I specifically remember I asked her if she knew who the president of the United States was. And, again, she had a grand sense of humor, and she said, well, I haven't seen a newspaper this morning, but I think it's still Ronnie Reagan. And the reason that that stuck in my mind, that was at a time when the Iran/Contra scandal was pretty much at its height. And she very definitely knew that what she was doing was making a little joke about who the president was. I asked her if she knew where she was, and she said, sure, she was in the courthouse in Alva.

And then, talking about the witnesses, Clark Schultz, Mickey Bouziden, Duane Carter, and Herb Smith asked her if she wanted them to be witnesses to her will. She said, well, that one, and she pointed at Duane Carter, she said, that one's sort of a relative of mine. I don't know if he can be a witness or not. And Herb asked her then—and he made a mistake, because I believe he said, oh, you're related to him through, I believe—I'm not sure, either through Willard or Neva Graham. And

whichever one he said, are you related through Willard, and she said, no, it's on the other side. Or if he said, is it Neva, and she said, no, it's on the other side. I don't remember which, but I do remember that she corrected Mr. Smith as to the relationship. And Mr. Smith asked, is he anyone who will benefit under your will? And she said, no, I'm not leaving him anything. Then I remember Mr. Smith said, well, it will be perfectly all right, I believe, for him to be a witness, then. And she said, well, I just wanted to be sure.

Judge Linder testified he then asked her questions about what property she had, who her relatives were, and who would receive her property under the will. To the latter question, she identified by name her daughter, Treva Sue Martin, and her granddaughter, Appellant Nancy Ryel. Judge Linder stated he asked the questions in an attempt to determine whether she had testamentary capacity and that he would not have signed it if he had determined that she did not have it.

Ryel contends the trial court improperly limited the testimony of Decedent's doctor as to evidence of his contact with her prior to 1988 or prior to July of 1988. She cites *In re Estate of Samochee*, 542 P.2d 498, 501–02 (Okl.1975), for authority that the court may consider evidence of Decedent's mental status, together with her appearance, conduct, acts, habits and conversation both before and after execution of a will to show her mental condition at the time of execution of the will. She also cites *Estate of O.L. Lacy*, 431 P.2d 366, 368 (Okl.1967), for authority that proof of testamentary capacity is not necessarily confined to the exact time of execution of the will.

The trial court sustained Parsons' objection to admission of evidence of Decedent's actions and conduct for the period of time between January, 1988 and July, 1988, stating "I'm not gonna go through seven months of medical treatment. Now, I don't—I'm not gonna restrict you on— ... presenting some evidence about '88, but I don't want to hear about every single day of treatment with her. That's not what I'm here for." The physician stated Decedent was diagnosed with Alzheimer's Disease in January, 1988. He stat-

ed his opinion was that she was not able to understand or plan a scheme of distribution of her property at the time she executed her will. He also testified as to what he believed was necessary to have testamentary capacity. When asked to summarize his opinion on her cognitive impairment, he stated he was first aware on January 19, 1988, that she lost her ability to plan a scheme of distribution of her property. He stated her impairment was ongoing after that. He also stated his opinion was based upon his treatment of Decedent for the entire time he was her physician.

The record shows that Ryel made an offer of proof of the doctor's testimony as to his contact with Decedent between January, 1988, and July 14, 1988. The offer of proof was made through the testimony of the physician. However, it was made on the record without the trial judge in the court room. After telling Ryel's attorney to make the offer of proof, the court was asked by Parsons' attorney if he would "sit there on the bench while they elicit all this testimony?" The judge told the attorneys to state their objections on the record "because your objection's already been sustained." The judge stated he had sustained the objection to the admission of the evidence because he felt it was not relevant. However, he told them to state their objections as they came up. The judge then excused himself while the offer of proof was put in the record.

■ Evidence of Decedent's conduct before and after the execution of her will is relevant and admissible, although not controlling, as to testamentary capacity. Such evidence may be considered to the extent of determining mental status at the time of the will's execution. See *In re Estate of Bracken*, 475 P.2d 377, 380 (Okl.1970), in which the Supreme Court stated with regard to determining testamentary capacity:

Advanced age, senility, confusion, and ill health are insufficient to justify denying probate of a will if testator possessed testamentary capacity at the time of execution. *In re Williams' Estate*, 207 Okl. 209, 249 P.2d 94 [ (1952) ]; *King v. Gibson*, 207 Okl. 251, 249 P.2d 84 [ (1952) ]. Testamentary capacity to make a will is determined as of the time a will is executed. Evidence

of testator's acts, either prior or subsequent to execution, are to be considered only to extent of determining mental status when a will was executed. *Standing alone, such evidence is neither controlling nor sufficient to establish lack of testamentary capacity. In re Fletcher's Estate,* Okl., 269 P.2d 349 [ (1954) ]; *King v. Gibson,* supra. (Emphasis added).

At the time the will was executed in the instant case, Judge Linder asked the Decedent questions which could not be answered with a "yes" or "no" answer. The questions required understanding and thinking. Judge Linder stated that at the time of the will's execution, he was satisfied Decedent knew what she was doing, and that she wanted to do it.

■ While it normally is error for the judge to be absent from the court room while a case is being tried, any error in this respect may be waived. See *Peters Branch of Intern. Shoe Co. v. Blake,* 73 Okl. 97, 176 P. 892 (1918). Ryel made no issue in this respect in the petition in error or in her brief. Therefore, this issue is not before us for decision.

■ Probate proceedings are equitable in nature. A trial court's orders will not be reversed unless they are clearly contrary to the weight of the evidence. *Matter of Estate of Beal,* 769 P.2d 150 (Okl.1989). We cannot say that the court's order admitting Decedent's will to probate was clearly contrary to the weight of the evidence.

AFFIRMED.

HUNTER, P.J., and BAILEY, J., concur.