1998 OK 8

In the Matter of the ESTATE OF
Lorita J. SNEED, Deceased.

Kay Donna HALL, Appellant,

v.

Michael JESTES, Appellee.

No. 86054.

Supreme Court of Oklahoma.

Jan. 27, 1998.

Drew Campo, Oklahoma City, for appellant.

Conner L. Helms of Woska, Hasbrook, Dowd, Underwood & Helms, Oklahoma City, for appellee.

LAVENDER, Justice.

¶ 1 The primary question before us is whether the district court's decision—to incorporate an exhibit by reference into Lorita J. Sneed's [Sneed or deceased] earlier-admit-

ted last will and testament—is against the clear weight of the evidence. Also at issue is whether Donna Kay Hall [Hall, contestant or appellant] is entitled to a new hearing to decide whether Michael Jestes[1] [Jestes, proponent or personal representative] unduly influenced Sneed in the making of the incorporated exhibit.

## I

### PROCEDURAL FACTS AND HISTORY

¶ 2    On August 22, 1990 Lorita Sneed executed a last will and testament. She died in March 1992. Under her will's terms all of her property, both real and personal, was devised to Michael Jestes, as trustee, with instructions that he distribute the same under the terms of Exhibit "A" to the will.

¶ 3    Although the exhibit attached to the will was dated August 20, 1990, there is evidence that its "trust" provisions were originally drafted on August 17, 1990. The exhibit purports to reflect the testatrix's "living will wishes." Jestes testified that he acted as Sneed's scrivener in the exhibit's preparation and did nothing more than record her decisions about how her assets were to be distributed.[2]

¶ 4    The testatrix died without issue. Under the dispositive provisions [as found in Exhibit "A"] of the Sneed will her estate is devised to (a) the heirs of her deceased brother [Kenneth Hall], i.e., the contestant and her two children, (b) the children of her deceased step-brother [Marlin Marsh], (c) Jestes and his sister and (d) various other friends and her church. The contestant and her children were the principal beneficiaries under the decedent's will, although the devises to Marlin Marsh's children and Jestes and his sister were each close in amount to the quantum given the contestant and her children.

¶ 5    The decedent's will was prepared by her lawyer of many years and was executed in his office. Although Jestes was present when the will was executed, he did not serve as one of its witnesses. Since Exhibit "A" to the will contains the dispositive provisions for Sneed's estate and it is specifically referenced in the will, her lawyer obviously reviewed the exhibit's terms when he drafted the document. Nonetheless, the record does not reflect any discussions between the lawyer and the testatrix about the will or its exhibit's provisions except on the day of the will's execution when the testatrix acknowledged before its witnesses that the document represented her dispositive wishes.[3]

¶ 6    On October 19, 1993 Jestes petitioned the district court to probate Sneed's will. Hall objected to its admission urging (1) that her aunt was of diminished mental capacity and suffered from insane delusions and (2) that Sneed's free agency had been overborne by Jestes' undue influence. In the summer of 1994 the trial court, sitting in probate, conducted a hearing on Sneed's testamentary capacity and the issue of undue influence. *This hearing was held before the exhibit in issue was bifurcated from the will.* During this proceeding the *contestant* examined Jestes about (a) his relationship with Sneed, (b) his role in the preparation of Exhibit "A", and (c) the execution of the decedent's last will and testament. It was also at this time that Jestes' counsel requested that Exhibit "A" be severed from the will and transferred to a division of the district court with the authority to determine if its provisions satisfied the requirements for the establishment of a valid inter vivos trust. In its August 30, 1994 order the trial court (sitting in probate) found that Exhibit "A" was *"not being offered* as either a testamentary disposition [or] as a residuary disposition under the residuary clause" of Sneed's will. Also, it found that Exhibit "A" was not being *offered* as a testamentary trust under the will's terms and that it [the court sitting in probate] did *not* have the remedial capacity to ascertain the instrument's validity as an inter vivos trust. At

---

1. The deceased was divorced at the time of her death. Her ex-husband was the uncle of Jestes' mother. While Jestes considered himself to be Sneed's great nephew and they conducted themselves as relatives, they were not related by blood.

2. Transcript [June 24, 1994 hearing], pg. 23.

3. Transcript [June 24, 1994 hearing], pg. 15.

the conclusion of the July 1994 hearing the latter issue was severed from the probate proceedings and transferred to the Chief Judge, Civil Division, Oklahoma County District Court. The district court—in an exercise of its remedial powers—concluded that the exhibit's provisions did not meet the statutory requirements necessary to establish an inter vivos trust.

¶ 7 After the district court ruled that the exhibit's provisions failed to create an inter vivos trust, the will's proponent moved to incorporate by reference the document's terms into Sneed's will. By its August 11, 1995 order the court allowed the requested incorporation and denied the contestant's motion for a hearing on the issue of the proponent's undue influence in the exhibit's preparation. It is from this latter order that Hall brings her appeal. The Court of Civil Appeals upheld the district court's decision. The appellant then sought certiorari which was granted.

## II

## THE STANDARD OF REVIEW

■■■ ¶ 8 Probate proceedings are of equitable cognizance.[4] While the Court will examine the whole record and weigh the evidence, the trial court's findings will not be disturbed on review unless they are clearly against the weight of the evidence or some governing principle of law.[5] We are mindful that when a will is offered for probate, the factum of the will—*i.e.,* (a) whether the will has been executed with the requisite statutory formalities, (b) whether the testatrix was competent to make a will at the time it was made, and (c) whether it was the product of undue influence, fraud or duress—becomes

the singular concern of the court.[6] The emphasis of this entire process is to discern and effectuate the decedent's dispositive intentions.[7]

## III

## SNEED WAS POSSESSED OF TESTAMENTARY CAPACITY

■■■ ¶ 9 Testamentary capacity exists when a person possesses, in a general way, the ability to appreciate the character and extent of the devised property, understands the nature of the relationship between themselves and the objects of their bounty and apprehends the nature and effect of the testamentary act.[8] Whether one possesses testamentary capacity is a question of fact. When a person contests a testator's soundness of mind, the burden of persuasion associated with the issue rests upon them.[9] When a court ascertains a decedent's testamentary capacity, it is appropriate for it to consider evidence of the testator's mental capacity, appearance, conduct, habits and conversation both before and after the will is executed—if these factors are relevant to his/her mental condition *at the time the will was executed.*[10]

■■■ ¶ 10 From the record it is apparent that until the very end of Sneed's life she was a self-reliant person with an independent will. She lived alone, drove her own car until the time of her death, mowed her own lawn, managed rental properties which she owned, and on occasions—contemporaneous to the execution of her will—managed a dentist's business office while he was out of town. The conveyances,[11] which Sneed made after executing her will, amply demonstrate that

---

4. *In re Estate of Lacy,* 1967 OK 123, 431 P.2d 366, 368 (1967).

5. *Matter of Estate of Maheras,* 1995 OK 40, 897 P.2d 268 (1995); *Hubbell v. Houston,* 1967 OK 138, 441 P.2d 1010, 1013 (1968).

6. *In re Marinoff's Estate,* 1956 OK 133, 297 P.2d 387 syl. 1 (1956).

7. *Miller v. First Nat. Bank & Trust Co.,* 1981 OK 133, 637 P.2d 75, 77 (1981); *McAllister v. Long,* 206 Okl. 623, 246 P.2d 352 (Okla.1952).

8. *Lacy, supra* note 4 at 368; *In re Martin's Estate,* 199 Okl. 567, 188 P.2d 862, 864 (Okla. 1948).

9. *Lacy, supra* note 4 at 368.

10. *Lacy, supra* note 4 at 368.

11. After executing her will Sneed conveyed by deed her rental properties and homestead to herself as trustee. She also purchased various annuities in her own name as trustee of the Lorita Sneed Trust.

she understood the character of her property and further that she understood the *intended* effect of her testamentary acts—even though the district court later determined that the provisions of Exhibit "A" were not legally sufficient to create an inter vivos trust. No evidence indicates any desire on the testatrix's part to change, alter or revoke the will during the almost two years between its execution and her demise.[12] From review of the record it cannot be said that the district court's decision that Lorita Sneed was possessed of testamentary capacity is clearly against the weight of the evidence.

## IV.

## THE DOCTRINE OF CLAIM PRECLUSION (RES JUDICATA) CANNOT BE BASED ON THE DISTRICT COURT'S JULY 6, 1994 ORDER SINCE THAT ORDER WAS NOT *FINAL*

¶ 11 Sneed's last will and testament, when proffered to the district court for admission, consisted of two pages plus Exhibit "A". When it was suggested by the will's proponent that the district court, sitting in probate, did not have "jurisdiction" to determine whether the terms of Exhibit "A" actually created an inter vivos trust, the district court by its July 6, 1994 order bifurcated the exhibit from the will—concluding that Exhibit "A" was not *then* being "offered" as a testamentary disposition, a residuary disposition or as Sneed's will. In this same order the district court judge, in reference to Exhibit "A", stated, "[A]ny rulings thereon will be reserved pending a[n] adjudication by the district bench as to its validity and operational effect of the instrument itself...."[13] The contestant asserts that because Jestes sought severance of the critical exhibit from the probate court's consideration, he was barred

by the doctrine of claim preclusion (*res judicata*) from later seeking incorporation of the exhibit's provisions into the Sneed will.

¶ 12 The July 6, 1994 order's language makes clear that the district court, sitting in probate, intended to reserve consideration of what effect, if any, should be given Exhibit "A" in the event it should be determined that its provisions did not create an inter vivos trust. This order—insofar as it concerns Exhibit "A"—is interlocutory and not final. By its July 6, 1994 ruling the district court merely found that *the proponent was not offering* the exhibit as a testamentary disposition. The issue of what legal effect, if any, would be extended to the exhibit's terms was reserved until after the district court had determined if the exhibit's provisions created an inter vivos trust.

¶ 13 The doctrine of claim preclusion operates to bar *relitigation* by the parties or their privies of issues which either were or could have been litigated in a prior action *which resulted in a final judgment* on the merits.[14] Because there had not been a final decree entered in Sneed's probate, there was no final judgment.[15] Under these circumstances the doctrine of claim preclusion is not available to the contestant to prevent the court's incorporation of Exhibit "A" into Sneed's will.

¶ 14 The criteria for incorporation of an extraneous instrument into a will by reference are: (1) the document must be in existence when the will is executed, (2) the will's text must reasonably identify the instrument, and (3) the reference must show the testatrix's intention to incorporate the document into her will or "at least [the] intention that the instrument should operate with [the] will in disposing of property left

---

12. Until the decedent's death the will was in her possession. The will's proponent secured the original will the week after Sneed's demise. *See* Transcript [July 1, 1994 hearing], pp. 10, 46.

13. *See* transcript of the district court's July 6, 1994 ruling, p. 6.

14. *Deloney v. Downey,* 1997 OK 102, 944 P.2d 312 (1997); *Erwin v. Frazier,* 1989 OK 95, 786 P.2d 61, 64 (1989).

15. *See In the Estate of Caldwell,* 1984 OK 92, 692 P.2d 1380, 1382 n. 8 (1984). Certain interlocutory probate orders—*see* the provisions of 58 O.S.1991 § 721—are appealable by right within thirty days after they are entered. *Failure to timely commence such an appeal does not preclude a party from asserting errors in the interlocutory order in an appeal later taken from the final judgment or final order in the case.* 58 O.S.1991 § 721.

... at death.".[16] Exhibit "A" predated Sneed's will, was specifically referenced and attached to the will, and contains Sneed's instructions for disposition of her estate. The exhibit to Sneed's will clearly meets *all* of the delineated criteria for incorporation by reference. The district court's order allowing the incorporation of the exhibit's terms into Sneed's will is sustained because all of the law's criteria for incorporation are satisfied and the probate court was not precluded from doing so by the doctrine of res judicata.

## V

**THE DISTRICT COURT'S REFUSAL TO CONDUCT A NEW HEARING ABOUT WHETHER SNEED'S WILL (WITH THE INCORPORATED EXHIBIT "A") WAS THE PRODUCT OF UNDUE INFLUENCE DID NOT DENY THE CONTESTANT DUE PROCESS**

¶ 15 Initially it must be said that a district court judge who is assigned a case is deemed to have read all pleadings and paperwork in the file unless the contrary is affirmatively demonstrated by the record. The contestant would have us assume that the Honorable Carol Hubbard, Judge, District Court, Oklahoma County, did not familiarize herself with all of the materials in the court's file—including the transcripts of the earlier hearing on the issues of (a) Sneed's testamentary capacity and (b) undue influence, filed with the court on June 26, 1995—when she denied the contestant another hearing on undue influence.[17] This we will not do *sans* affirmative proof.[18]

¶ 16 Minimum standards of due process require that the district court, sitting in probate, afford the contestant an opportunity to be heard on the issues of Sneed's testamentary capacity and undue influence.[19] During the 1994 hearing culminating in the district court's July 6, 1994 order admitting the will to probate, the contestant examined the proponent about the preparation, execution and contents of Exhibit "A"—even though the court later concluded that the exhibit should be bifurcated from the will. This testimony was part of the court's file in this matter when Judge Hubbard permitted the incorporation of the exhibit's terms into Sneed's will. Her ruling is impliedly based on consideration of this evidence and an implied corollary finding that the exhibit was not the product of undue influence. The contestant has been given the meaningful opportunity which due process requires.

## VI

**THE DISTRICT COURT'S INCORPORATION OF EXHIBIT "A" INTO SNEED'S WILL IS *NOT* CLEARLY CONTRARY TO THE WEIGHT OF THE EVIDENCE**

¶ 17 Undue influence is that degree of influence which destroys the testatrix's free agency and must occur at the time when the will is executed to be condemnable.[20] For influence to be wrongful, it must be used directly to procure the will and rise to a level of coercion which in effect substitutes another's will for that of the testatrix's. The *existence of a confidential relationship* between the testatrix and a family member or friend is a circumstance which will not defeat a will unless it is shown to affect the *substance* of the decedent's testamentary act.[21]

---

**16.** *Miller, supra* note 7 at 77 (1981) [quoting *Bottrell v. Spengler*, 343 Ill. 476, 175 N.E. 781 (1931)].

**17.** *See* Appellant's Reply to Appellee's Answer to Appellant's Petition for Writ of Certiorari, pg. 1.

**18.** *Martin v. Spaulding*, 40 Okl. 191, 137 P. 882, 883 (Okla.1913), where the court held:

"Where the testimony is oral and conflicting, and the finding of the court is general, such finding is a finding of every special thing necessary to be found to sustain the general finding, and is conclusive upon this court upon all doubtful and disputed questions of fact."

**19.** *Prickett v. Moore*, 1984 OK 54, 684 P.2d 1191, 1193 (1984); *Bomford v. Socony Mobil Oil Co.*, 1968 OK 43, 440 P.2d 713, 718 (1968).

**20.** *Hubbell, supra* note 5 at 1018; *In re Estate of Bracken*, 1970 OK 185, 475 P.2d 377, 380 (1970); *In re Groves' Estate*, 1958 OK 146, 321 P.2d 381, 384 (1958).

**21.** *Hubbell, supra* note 5 at 1016; *In re Lillie's Estate*, 195 Okl. 597, 159 P.2d 542, 545 (Okla.

¶ 18 The contestant would have the district court, sitting in probate, *presume* that Sneed's will was the product of Jestes' undue influence. Hall urges that she should have been given the benefit of a rebuttable presumption of undue influence[22] because (1) the devise to Jestes and his sister was unnatural since they were not related by blood to the decedent, (2) Jestes was in a confidential relationship with Sneed until the time of her death,[23] and finally (3) Sneed did not receive independent advice from her attorney regarding the provisions of Exhibit "A".

¶ 19 The foundational facts upon which a court could predicate a finding that the presumption of undue influence is applicable are not demonstrated by the record in this matter. Sneed's bequest to Jestes and his sister is not *unnatural* as that term is used in assaying the availability of the presumption of undue influence. Nor does her testamentary scheme result in strangers receiving all of her property.[24] While she did not give her entire estate to her *blood* relatives—*i.e.*, the contestant and her children—she did not disinherit them since they are in fact her principal heirs.[25] Simply because Jestes and his sister were not the decedent's blood relatives, does not remove them from the class of persons to-

wards whom the testatrix could be naturally inclined to convey her estate.[26] Jestes enjoyed a kindred relationship—though not of blood—with his enately-related great aunt for over forty years. Although Sneed and Jestes' great uncle were divorced at the time of her death, there is nothing in the record to evidence that Jestes and his great aunt enjoyed anything but a healthy, cordial and supportive relationship until her death. While the record evinces that the will's proponent and the decedent dined on a regular basis, *i.e.*, twice a month, and did on occasion pray together, this in and of itself is neither wrongful nor sufficient to create a presumption of undue influence.[27] Nor is the fact that Jestes served as the scrivener for Exhibit "A", without more, sufficient to create the sought presumption.[28] Finally, Jestes' presence in the room when Sneed executed her will does not constitute, of itself, "active" participation in either the preparation or execution of the testamentary instrument.[29] Power, motive, and opportunity to exercise wrongful influence, standing alone, do not raise a presumption that undue influence was exerted in a will's procurement.[30] This is especially true where, as here, the uncontroverted evidence is that the testatrix—at a date later than that of the supposedly tainted

---

1945); *In re Cook's Estate*, 71 Okl. 94, 175 P. 507, 509 (Okla.1918).

22. The rebuttable presumption of undue influence, when available to a will contestant, will shift the burden of *producing evidence* to the will's proponent to show that the testatrix's free agency was not overcome. Nonetheless, the *burden of persuasion* assigned by law to the will's contestant in the matter will remain unchanged. *See Maheras, supra* note 5 at 273.

23. The contestant bases this contention upon the fact that the decedent named Jestes her successor trustee under her will's provisions.

24. *See Groves' Estate, supra* note 20. There the Court held that if a testator possesses the requisite testamentary capacity, he has *"the right to make an unequal distribution* of his property among his heirs or to give it entirely to strangers."* [Emphasis added.] *Id.* at 385.

25. The contestant remained the testatrix's heir in spite of the tensions in their relationship. In 1989 shortly after her father's death the contestant asked Sneed not to come back to her house. Record, p. 440.

26. *See Matter of the Estate of Webb*, 1993 OK 75, 863 P.2d 1116, 1122 (1993).

27. *In re Martin's Estate*, 1953 OK 260, 261 P.2d 603, 607 (1953); *Lillie's Estate, supra* note 21 at 544.

28. *See Lillie's Estate, supra* note 21 at 545. There the court held that the mere existence of a confidential relationship between a testator and a beneficiary under his will without more does not raise a presumption that the beneficiary has exercised undue influence. *See also Bracken's Estate, supra* note 20 at 380.

29. *White v. Palmer*, 1971 OK 149, 498 P.2d 1401, 1406 (1972). The contestant's assertion that Jestes "oversaw" the attachment of Exhibit "A" to the will is not corroborated by the record. *See* Transcript (June 24, 1994 hearing), p. 16.

30. *In re Estate of Newkirk*, 1969 OK 93, 456 P.2d 104, 107 (1969); *In re Martin's Estate*, 1953 OK 260, 261 P.2d 603, 607 (1953).

exhibit—sought the assistance of independent counsel to prepare her will, a will which the court found was not the product of undue influence. The existence of undue influence is a question of fact and the district court's finding on this issue is not clearly contrary to the weight of the evidence.

## VII

### THE APPELLEE'S MOTION FOR AN APPEAL–RELATED COUNSEL–FEE AWARD IS DENIED

¶ 20 The appellee seeks an appeal-related counsel fee award under the terms of Okla.Sup.Ct.R. 1.14.[31] Such an award is appropriate only when the appeal is one having no reasonable legal or factual basis to support it.[32] All doubts whether the appeal is frivolous should be resolved in favor of the appellant.[33] Because it cannot be said that Hall's appeal is frivolous, the appellee's motion for appeal-related attorney fees is denied.

## VII

### SUMMARY

¶ 21 Because each of the law's requirements for incorporation of Exhibit "A" by reference into Sneed's will are fully satisfied, the district court's decision to do the same is legally correct. Our standard of review requires that we further assay the validity of the district court's probate order to determine that it is not clearly contrary to the weight of the evidence.

¶ 22 Based upon an assessment of the facts detailed in the record there is nothing in Sneed's will which is inconsistent with her obligations or affections during the latter part of her life. She did not disinherit her blood relatives, i.e., the contestant and her children who are the principal beneficiaries under her will's terms. The other heirs are either her kindred, friends or her church.

¶ 23 In its establishment of the will's factum the district court determined that Sneed possessed the requisite mental capacity to execute her will and that her free agency was not overborne by the will's proponent. Almost two years intervened between the will's execution and Sneed's death. During this time Sneed not only conducted her own business affairs in an independent fashion but she also managed them in a manner consistent with and supportive of the dispositive intentions reflected in her will. On this record the district court's decision to admit Sneed's will to probate with the terms of Exhibit "A" incorporated into it is clearly not contrary to the weight of the evidence. On certiorari previously granted,

THE COURT OF CIVIL APPEALS' OPINION IS VACATED AND THE DISTRICT COURT'S PROBATE ORDER IS AFFIRMED; APPELLEE'S MOTION FOR APPEAL–RELATED ATTORNEY FEES IS DENIED.

¶ 24 KAUGER, C.J., and HODGES, HARGRAVE, OPALA and ALMA WILSON, JJ., concur.

¶ 25 SUMMERS, V.C.J., and WATT, J., concur in result.

¶ 26 SIMMS, J., dissents.

SIMMS, Justice, dissenting:

¶ 1 I must respectfully dissent. I do not concur with the majority's view that the facts of this case support the trial court's decision to apply the doctrine of incorporation by reference and its finding that the attached Exhibit A should be incorporated by reference into Sneed's will. Further, I am persuaded that contestant has been denied an opportunity to challenge the legitimacy of Exhibit A and present evidence on issues concerning decedent's competency and proponent's undue influence over decedent in procuring the document.

¶ 2 As noted by the majority, certain requirements and conditions must be met be-

---

**31.** 12 O.S.1997 Ch. 15, App. 1, Rule 1.14.

**32.** *Whitlock v. Bob Moore Cadillac, Inc.*, 1997 OK 56, 938 P.2d 737, 738 (1997); *TRW/Reda Pump v. Brewington*, 1992 OK 31, 829 P.2d 15, 22 (1992).

**33.** *TRW/Reda, supra* note 32 at 31.

fore the doctrine may be invoked and a properly executed will may be held to incorporate into itself by reference a separate paper or document so as to take effect as part of the will whether the paper or document be in the form of a will. Even though the exact wording of the requirements varies from jurisdiction to jurisdiction which recognize the doctrine, all jurisdictions, including Oklahoma, require that: (1) the extrinsic document must in fact be in existence at the time of the execution of the will and the will must refer to it as existing; (2) the will must describe or identify with reasonable certainty the paper or document intended to be incorporated in the will; and (3) the testator's intention to incorporate the paper for the purpose of carrying out his testamentary desires must clearly appear from the language of the will. See *T. Atkinson, "The Law of Wills,"* § 80, (2nd ed.); *Miller v. First National Bank & Trust Co.,* 637 P.2d 75 (Okl.1981); *In re Fullerton's Estate,* 375 P.2d 933 (Okl.1962).

¶ 3 The requirements of the doctrine are not met by the facts of this case. The language of this will is not the language of incorporation by reference. In pertinent part, the will merely provides:

"2. All the rest and residue of my property, real and personal, of every kind and character, and wherever situated, whether vested or contingent at the time of my death, I devise and bequeath to my nephew, Michael Jestes, as Trustee, with direction that after payment of all debts, funeral expenses, and costs of administration of my estate, as shown in Exhibit A hereto attached, be distributed upon Final Distribution under the terms and conditions of said Exhibit A hereto attached."

¶ 4 The will does not describe Exhibit A sufficiently to make it capable of identification and distinguish it from any other paper which might have "Exhibit A" written upon it. It is therefore not possible to identify the document as the document mentioned in the will with reasonable certainty. See *Keeler v. Merchants' Loan and Trust Co.,* 253 Ill. 528, 97 N.E. 1061 (1912); *Wagner v. Clauson,* 399 Ill. 403, 78 N.E.2d 203, 3 A.L.R.2d 672; *Brooker v. Brooker,* 130 Tex. 27, 106 S.W.2d 247 (1937); *Taylor v. Republic National Bank,* 452 S.W.2d 560 (Tex.Civ.App.1970).

¶ 5 The language of the will does not express an intention to incorporate Exhibit A into the will; it does nothing more than make reference to the trust and the trustee. Simply being "referenced and attached" to the will is not being "incorporated". In order to incorporate a document by reference the intention of the testator to do so must be clearly expressed in the will. Under similar facts, the use of the word "attached" in a will has been held not to be the equivalent of "incorporated". In *Taylor v. Republic National Bank, supra,* the residual provision of the will provided the remainder of the estate was given to an organization specified in a "Detailed Described Document ... attached". The court noted that the testator did not refer to the attached document in question as "incorporated herein" or "incorporated herein and made a part of" or any similar wording and determined that no authority existed to support holding that "merely stating that something is attached to a will represents an intention to incorporate by reference the attached document into the will. Mere reference to a document is not enough. In order to incorporate a document by reference, the intention of the testator must be clearly expressed in his will." At 563. See also *Bottrell v. Spengler,* 343 Ill. 476, 175 N.E. 781 (1931); *Witham v. Witham,* 156 Or. 59, 66 P.2d 281 (Or.1937); 156 Or. 59, 66 P.2d 281, 110 ALR 253.

¶ 6 Proponent Jestes had the burden of proving incorporation of Exhibit A into decedent's will by reference as he was the party claiming it. He has been entirely relieved of carrying this burden of proving compliance with the doctrine's several requirements, however, by this Court's decision which allows Exhibit A to be admitted to probate although Jestes has put on no affirmative evidence to show that the language of the will clearly expresses the testator's intent to incorporate the instrument in her will or sufficient evidence to identify the document or establish that it was in existence when the will was made.

¶ 7 Proponent Jestes offered the will with Exhibit A stapled to it for admission to pro-

bate. After a hearing before the Honorable Thornton Wright, proponent, on his own motion and over the objections of contestant Hall, then sought to withdraw Exhibit A from the court's consideration as a testamentary document and also argued that the trial judge did not have jurisdiction to consider the validity of the Exhibit as an inter vivos instrument. Hall points out that allowing the voluntary dismissal mooted her challenge to the exhibit's validity and prevented her attempt to show, by sharply disputed facts, that proponent obtained the exhibit by undue influence. Thereafter, Judge Wright entered his Order of July 6, 1 994, granting proponent's requests in all respects and holding against the contestant: proponent was allowed to withdraw Exhibit A from being offered as a testamentary instrument; Exhibit A was ordered severed from the will and the will was admitted to probate without it; the issue of Exhibit A's validity as an inter vivos trust was ordered bifurcated from the case and that issue was "reserved" and "transferred" to the Chief Judge of the District Court for decision. That Order provides these findings of the court:

"1. Notice has been given as required by law.

2. The Court has personal jurisdiction over the parties and subject matter over the issues regarding whether the Will offered by the Petitioner should be admitted for probate.

3. The decedent, Lorita J. Sneed, passed away or March 21, 1 992, and was a resident of Oklahoma County, State of Oklahoma at the time of her death.

4. The Decedent executed a Last Will and Testament on August 22, 1990, which Petitioner is offering for probate herein.

5. On August 22, 1990, Lorita J. Sneed possessed sufficient testamentary capacity to execute the Will being offered by the Petitioner.

6. On August 22, 1990, Lorita J. Sneed was not acting under the influence of duress, menace, fraud or undue influence when she executed the Will in question.

7. The Will in question was executed in accordance with the laws of the State of Oklahoma then in force and effect.

8. The Will should be admitted for probate.

9. The Exhibit A Attached to the decedents Will has been referred to by counsel for the Petitioner as being quote "a living trust" an inter vivos disposition.

10. Exhibit A is not being offered as either a testamentary disposition nor as a residuary disposition under the residuary clause of the Last Will And Testament of Lorita J. Sneed. Exhibit A is not being offered as a Last Will and Testament of Lorita J. Sneed.

11. The Court finds, over Contestants objection, that the Petitioner by virtue of statements made in open court and by virtue of pleadings filed in this case has not offered and is not offering Exhibit A attached to the will as a testamentary trust.

12. The Court does not have the jurisdiction or the authority to ascertain the validity of this inter vivos instrument.

13. The question remains whether Exhibit A is a valid inter vivos trust, proper and duly executed, and enforceable.

14. The question of the validity and enforceability of the quote, "inter vivos trust," Exhibit A, should be transferred to the appropriate division of out District Court which has subject matter jurisdiction to decide the matter.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED BY THE COURT that the Petitioners Motion for Directed Verdict be and is hereby sustained in part and the Last Will and Testament of Lorita J. Sneed is hereby admitted to probate without the attached Exhibit A.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED BY THE COURT that the issues of the validity and enforceability of Exhibit A as an inter vivos trust, and whether the decedent established a living trust, are severed from these proceedings and are hereby transferred to the Chief Judge of the Civil Division of the District Court for reassignment and further adjudication."

¶ 8  The resulting decision of the District Judge was that Exhibit A did not create a

viable inter vivos trust. Jestes did not appeal that decision.[1] Understandably Jestes rethought his position and he then returned to the probate division and moved the newly appointed successor Judge, Honorable Carol Hubbard, to order Exhibit A incorporated by reference into Sneed's will as a testamentary document. Over contestant's objections, Judge Hubbard summarily allowed proponent's requested incorporation of Exhibit A by reference into the will as a testamentary document.

¶ 9 Under the circumstances of this case it appears that estoppel could have been properly invoked to preclude proponent from asserting these inconsistent positions. See for instance *Magnolia Petroleum Co. v. Ouart*, 200 Okl. 258, 192 P.2d 698 (1947); *Messler v. Simmons Gun Specialties, Inc.*, 1984 OK 35, 687 P.2d 121 (Okl.1984); *Willard v. Ward*, 1994 OK CIV APP 85, 875 P.2d 441 (Okl.App.1994); *In re Johnson*, 518 F.2d 246 (10th Cir.1975) and the authorities cited therein. See also 28 AM.Jur. 2nd Estoppel and Waiver § § 68 et seq.

¶ 10 It is arguable that res judicata does apply here and proponent's attempt to breathe this new life into his abandoned theory comes too late because the court's Order of July 6, 1994, admitting the will to probate without Exhibit A attached, was final in that regard and it was not appealed. Claim preclusion should therefore be available under these circumstances to foreclose this effort to again visit this issue. See 58 O.S. 1991, § 721. See *Wilson v. Kane*, 1993 OK 63, 852 P.2d 717 (Okl.1993); *Veiser v. Armstrong*, 1984 OK 61, 688 P.2d 796 (Okl.1984).

¶ 11 The majority's position that the Order intended to "reserve" testamentary consideration of Exhibit A in the event it was found not to create an inter vivos trust and therefore is not foreclosed by res judicata, is not convincing. It is not supported by the Order in issue or the record. The majority attempts to justify this result, which is plainly at odds with the court's Order, by relying on an excerpt of the transcript of the hearing that is taken out of context. The Order, set forth above, speaks for itself. Taken in context, the excerpted language speaks only to the necessity for the court at that time to await the ruling from the district judge on the issue of the validity of the inter vivos trust so that the court would know what manner of distribution of the estate should be made—pursuant to the will which had been admitted to probate or under the terms of the trust.

¶ 12 Even accepting the majority position on res judicata as correct does not justify its disposition of this cause, however. Proponent has never put on *any* proof in support of his requests to incorporate Exhibit A. He voluntarily dismissed his first effort and the successor trial court summarily granted his request to reinstitute the claim without a hearing over the objections of contestant which led to this appeal. Now the majority summarily affirms that summary judgment, declaring, although there is absolutely no evidence in support, that the district court's order allowing the incorporation is sustained because "all of the law's criteria for incorporation are satisfied." The majority recognizes that contestant is constitutionally entitled to an opportunity to be heard but then proceeds to deny her that opportunity. At a minimum, the Court should remand this matter to the trial court for a trial of the issues. Like all other litigants, proponent should be expected to carry the burden of proving his case.

¶ 13 The facts of this case, are peculiar indeed and they are therefore unlikely to repeat. I am concerned, however, that the majority does the law no good service by implicitly approving the erroneous and unorthodox procedures and judicial processes which underlie this action.

¶ 14 I would reverse the trial court.

1. Because of the finality of the holding that Exhibit A is not a valid inter vivos document, it is unnecessary to discuss the problems which have been held to arise when a testator establishes an inter vivos trust and attempts to "pour over" part of his estate on death into that trust through incorporation by references. See, e.g., *T. Atkinson, "The Law of Wills," supra* at 392–393; *In re Estate of Meskimen*, 39 Ill.2d 415, 235 N.E.2d 619 (1968); *Wells Fargo Bank & Union Trust Co. v. Superior Court*, 32 Cal.2d 1, 193 P.2d 721 (1948). See also 84 O.S.1991, § 301; *Miller v. First Nat. Bank & Trust Co.*, 637 P.2d 75, 78 (Okl.1981), Hargrave, J., Dissenting.

WATT, Justice, with whom SUMMERS, Vice Chief Justice, joins, concurring in result.

I concur in the result reached by today's judgment, but I write separately. The procedural history of this case serves as a stark example of the unnecessary confusion and complexity that has resulted from this Court's refusal to give effect to Okla. Const. Art. 7 § 7, the court reform constitutional amendment. I think a comment on the practical problems that refusal has created is called for here.

Okla. Const. Art. 7 § 7, did away with County Courts, in which probate jurisdiction had been vested, and placed plenary jurisdiction in the District Court. ("The District Court shall have unlimited original jurisdiction of all justiciable matters....") Here one judge of the district court, sitting in a probate matter, "severed" the trust attached to a will that had been presented for probate and transferred it to the chief judge of the district court because the trust might have been an inter vivos trust. Given this Court's refusal in *Wilson v. Kane,* 1993 OK 65, 852 P.2d 717, to give effect to Art. 7 § 7, the judge in the probate matter had to do so. Nevertheless, under the constitution, the judge in the probate matter clearly had jurisdiction to interpret the trust, whether it was testamentary, intervivos, or a combination. Unfortunately, the majority in *Wilson v. Kane* refused to give effect to the constitution.

I pointed out in my dissent in *Wilson v. Kane* that the majority opinion continued the confusion in the law concerning what a probate judge can and cannot do, and was clearly contrary to the intent of the people when they passed court reform. The procedural picture here proves the point. The wasteful practice of having two judges of the same district court interpret a single trust instrument demonstrates the people's wisdom in passing a constitutional amendment that should have rendered such a practice unnecessary. I urge the Court to revisit this issue when an appropriate case is presented.